NEWYORK,
May, 1812.

STEWART
v
DOUGHTY.

## STEWART, JUN. *against* DOUGHTY AND OTHERS.

A. let to B. a farm for six years, and A. agreed "to render, yield and pay to A. the one half of all the wheat, rye, corn and other grain raised on the farm in each year, in the bushel," &c. and it was also agreed, that either party might put an end to the lease, on giving to the other six months' notice; but if A. gave notice to B. to quit, he was to allow B. "for preparing the ground for seed, and for any other extra labour," &c. In the autumn of 1808, B. sowed the ground with wheat, rye, &c. and on the last of February, 1809, while the wheat, &c. was growing, A. gave notice to B. to quit, and he accordingly left the premises immediately thereafter.

THIS was an action of trespass *quare clausum fregit,* for breaking and entering the plaintiff's close, cutting down, taking and carrying away, a quantity of wheat and rye in the sheaf, the property of the plaintiff. The defendants pleaded the general issue, with notice, that they would give in evidence that the close mentioned in the declaration, at the time of the supposed trespass, was the proper close of *Daniel L. Van Antwerp,* and also, that the wheat and rye thereon growing, belonged to him, and that the defendants, as servants to the said *Van Antwerp,* and by his direction, entered and cut, and took and carried away the said wheat, &c.

The cause was tried at the *Saratoga* circuit, in *May,* 1811, before Mr. Justice *Spencer.*

The plaintiff gave in evidence an agreement dated 4th *September,* 1804, between *Andrew Stewart* and *Van Antwerp,* by which the latter let a farm, including the premises, to *A. Stewart,* for six years, from the 1st *May,* 1805, or from the time of his taking the possession. By the 8th article of this agreement, *A. Stewart* stipulated " to render, yield and pay, to *Van Antwerp,* the one half of all the wheat, rye, corn and other grain, raised on the said farm, in each year, in the bushel, after deducting the seed," &c. By the 12th article, it was agreed, between them, that either party might determine the other's right to the benefit of the agreement, " on giving six months' previous notice in writing, of such intention to the other party;" and if *Van Antwerp* gave the notice, he was to allow *A. Stewart* for preparing the ground for the seed,

By virtue of an execution against the goods and chattels of B. at the suit of C., the sheriff, in *January,* 1809, seized all the personal property of B., and sold all right and title to the wheat, &c. then growing on the farm, to D., who, afterwards, in the summer of 1809, when the grain was ripe, entered on the farm to reap the wheat, and while reaping, A. with his servants, entered and drove him out, and took and carried away the wheat, &c.

In an action of *trespass quare clausum fregit,* brought by D., it was held that B. had a good right to the crop, as *emblements,* which was not affected by the clause providing for a compensation to him for preparing the ground; that the sheriff's sale of this right, while the crop was on the ground, and before the notice to quit, was valid, and D. the purchaser, had the right of ingress, &c. to gather and carry away the crop; and this right could not be impaired or affected by B.'s subsequent quitting the possession of the farm.

That B. had the interest in the whole crop, until he had separated and delivered A.'s proportion, the reservation being as rent; and that the whole property and interest having passed to D. by the sale, he might maintain *trespass quare clausum fregit.*

and for any other extra labour, as should be assessed by indiffer-

ent persons to be chosen.

A. *Stewart* took possession of the farm, in *May*, 1805, and continued in possession until the last of *February*, 1809, when he removed from the premises, in consequence of a written notice from *Van Antwerp*, to quit in six months thereafter. The wheat and rye, &c. for which this action was brought, had been sown by *A. S.* on the premises, the autumn before he received the notice to quit.

A *fieri facias* was issued out of this court, against *A. Stewart*, at the suit of *John Sayles*, on a judgment entered up on the 28th *December*, 1808, for 300 dollars. The execution was tested the 28th *November*, 1808, and made returnable the first *Monday* of *February*, 1809. Before the return day of the execution, the sheriff, by virtue thereof, sold the right and title of *A. Stewart* to the wheat and rye in *Halfmoon*, where the premises are situated, to the plaintiff, and gave a bill of sale to him.

The advertisement and sale were made at *Ballston*, and at the time of the sale, the sheriff said, that he did not know whether he had advertised at *Halfmoon;* that if he had no power to sell, it must be at the peril of the purchaser. The sheriff did not go to the field where the wheat and rye were growing, and he made no delivery of them to the purchaser. He went to the house on the farm, and levied on personal property of *A. Stewart* there. At the time of sale, he mentioned the wheat and rye as growing. They were not designated in the advertisement, which mentioned, generally, all the personal property of *A. Stewart.* The sale was in *January*, 1809.

*Van Antwerp* and *A. Stewart* had expressly agreed between them, that as it was impossible to ascertain the value of the wheat, rye, &c. the rights of the parties should remain, as under a former agreement.

The plaintiff, in the summer of 1809, with reapers, entered the close in question, and while they were reaping and gathering the wheat and rye, *Van Antwerp* and the defendants came into the field and drove them out, and took and carried away the wheat and rye, the value of which was proved.

After *A. Stewart* left the *locus in quo*, pursuant to the notice to quit, *Van Antwerp* put another tenant in possession of the house and part of the farm, and directed him to keep up the fence around the wheat and rye.

A verdict was taken for the plaintiff, for 133 dollars and 50

NEWYORK, cents, being the value of all the wheat and rye, subject to the
May, 1812. opinion of the court; the defendants insisting that they were, at all
STEWART events, liable for no more than the value of one half.
v.
DOUGHTY.

*Huntington* and *Skinner*, for the plaintiff. The agreement in this case, between *A. Stewart* and *Van Antwerp*, amounted to a lease or tenancy at will.* As between, them, therefore, *A. Stewart* was entitled to the wheat and rye, as *emblements*. The law on this subject is clear and well settled.†

The only question is, whether the plaintiff, in this case, can maintain trespass *quare clausum fregit.*

*Van Antwerp* was not interested as a *tenant in common* with *Stewart*, in the growing crop. The reservation expressed in the 8th article of the agreement is by way of *rent.*‡

*A. Stewart*, the tenant, had the right of *ingress, egress* and *regress*, for the purpose of cutting and carrying away the wheat and rye. Having an exclusive right to the growing crop, he had also a right, in that respect, to the soil. *Close* properly means an interest in the soil. Every person who has a right to the *herbage*, or *prima tonsura*, or a right to the *profits*, in exclusion of others, may maintain this action.§

If, then, *A. Stewart*, the tenant, could maintain the action, the plaintiff, who purchased all his right, may maintain it. The title to wheat and corn growing is a chattel, and may be taken and sold on execution.**

If *Van Antwerp* was tenant in common of the crop with his tenant, this action would be equally maintainable.††

The 12th article of the agreement, by which it was stipulated that if *Van Antwerp* gave the notice to quit, he was to allow *A. Stewart*, for preparing the ground, &c. may, perhaps, be set up in bar of the right to *emblements*. But the tenant was to furnish the seed. The object of this special agreement was to compensate the tenant for preparing the ground, sowing the seed, and extra labour, which he could not, otherwise, recover at common law, as emblements; for if the lessor enters before sowing, the lessee at will is not entitled to the cost of ploughing and manuring the land.‡‡ This clause, therefore, could not have been intended to bar the tenant's common law right to emblements; nor can this right be barred or taken away, unless by express words.§§

*Parker* and *Foot*, contra. By the agreement, the interest of

* *Woodfall,* 235. *Cruise's Dig.* tit. 9. c. 1. s. 4. 1 *Inst.* 55. a. n. 1.
† *Woodfall,* 306. 309. 2 *Bl. Com.* 306. *Doug.* 206.
‡ 2 *Johns Rep.* 421. note. *Bull. N.P.* 85.
§ *Chitty on Pl.* 176—178. *Woodfall,* 619. 630. 632. *Ld. Raym.* 188., 7 *East,* 200. 5 *East,* 480. 6 *East,* 602. 3 *Burr.* 1556. 1825. 1 *Saund.* 322. note 5. 5 *Term Rep.* 329.
** 2 *Johns. Rep.* 418. 3 *Johns. Rep.* 216.
†† *Chitty,* 180. *Co. Litt.* 13. 3 *Wils.* 110.
‡‡ *Co. Litt.* 55. a. *Woodfall,* 307.
§§ 8 *Term Rep.* 139. *Kyd on Awards,* 12—18.

*A. Stewart* was determined, on receiving the notice to quit; and after he left the premises, pursuant to that notice, he could no longer maintain trespass. His only remedy is on the contract. To maintain trespass *quare clausum fregit*, the plaintiff must show a right of entry. *A. Stewart* had no such right, as against *Van Antwerp*, his landlord. Admitting that the tenant had a right to the crop, the plaintiff could only have a right to enter and take it, or to maintain an action *de bonis asportatis*, against the defendants.

Corn growing is susceptible of delivery in no other way, than by putting the party in possession of the soil.*

The reservation in this case was not of rent, but the tenant was to have the crop on shares. He and *Van Antwerp* were joint owners of the crop, and might maintain trespass, as such, according to the principle laid down in *Foot and Litchfield v. Colvin.*† Now, to enable the plaintiff to maintain trespass *quare clausum fregit*, he must have the exclusive right to the crop.

Again, there was, in fact, no seizure of the wheat and rye, by the sheriff. *Van Antwerp* had put another tenant in possession. To maintain this action, there must be a possession, in *fact*, of the property. A general property is not sufficient.‡

* 2 *Johns.* Rep. 56. (a dictum only of Kent, Ch. J.)

† 3 *Johns.* Rep. 216— 221.

‡ 1 *Johns.* Rep. 511. 1 Term Rep. 428.

KENT, Ch. J. delivered the opinion of the court. There are several questions raised in this case, which it will be necessary to consider.

1. The first question is, whether the plaintiff be entitled, in any form of action, to recover?

The lease was determined while the crop was in the ground, and it was determined by the lessor, under the provision contained in the 12th article of the agreement. The right to the emblements which would otherwise exist in the lessee, as the duration of his estate depended upon the will of the lessor, does not appear to be controlled or affected by the special contract of the parties. In case of the determination of the estate by the lessor, the contract provides for compensation only, "for preparing the ground for the reception of seed, or for any other *extra* labour." This preparation of the ground for the reception of seed is not necessarily a substitute for the right to the emblements, for it may apply to clearing and manuring and ploughing the ground, and these acts may have taken place long before seed time. The

NEWYORK
May, 1812.

STEWART
v.
OUGHT?

common law has established a distinction in respect to this very subject of emblements, between the right to emblements and the costs of plowing and manuring the ground, so that the determination of an estate at will, would give to the lessee his emblements, but not any compensation for these improvements. He might be ousted of the possession before the crop was in the ground, and wholly lose the expense of plowing and manuring the land, though if he was ousted afterwards, he would be entitled to the emblements. (*Bro. Abr.* tit. *Emblements*, pl. 7. tit. *Tenant per copie de court roll*, pl. 3.) We ought to consider the compensation intended by the article for such a case as this, and not as an equivalent for the crop itself. The doctrine of emblements is founded on the clearest equity and the soundest policy, and ought to receive a liberal encouragement. Compensation for *preparing the ground for seed* is not an indemnity for the loss of the crop, which includes the loss of the seed, the labour of sowing and nursing it, and the hopes, to the labourer and his family, of a fruitful harvest.

While the crop was in the ground, and before notice to quit, it was sold by the sheriff under an execution against the lessee, and the plaintiff became the purchaser. This was a valid sale, and the purchaser became entitled to the right of *ingress*, &c. to gather the crop. He succeeded to all the interest of the original lessee in the crop sown, and so the law was understood by this court, in the case of *Whipple* v. *Foot.* (2 *Johns. Rep.* 423.) The subsequent act of the lessee, in abandoning the premises, soon after notice was given, did not impair or affect the purchaser's right which had already vested. Quitting the premises was not injurious to the lessor. He lost no rent by it. It was in furtherance of his wishes, and in obedience to his notice; and if the lessee had continued in possession for the whole six months, he would probably have been an injury to the farm, by preventing its improvement the ensuing season. His prompt abandonment of the premises was no injury, and no reason why he should lose his emblements, even if we were to admit that he had it in his power, by this means, to affect the purchaser's interest. The lessor himself did not intend by the notice, to deprive the lessee of the crop already sown, for the six months would not have expired until after harvest. The plaintiff, therefore, appears to have had a clear right and title to the emblements, at the time they were gathered by the defendants.

2. The next question is, whether the plaintiff is entitled to recover the whole or only a moiety of the crop. This will depend upon the question, whose property the grain was before a moiety was delivered to the lessor. By the 8th article of the agreement, the lessee was to " render and yield and pay to the lessor the one half of all the wheat, rye, corn and other grain, raised on the farm, in each year, in the bushel, after deducting the seed, and also the one half of the butter and cheese," &c. and by the 9th article he was to deliver such a proportion of the hay, &c. But here was a lease for five years, and the articles of agreement expressly declared, that *Van Antwerp* " rented and hired, and suffered the lessee to possess and enjoy the farm, and gave him the quiet and uninterrupted possession," &c. An interest in the soil passed, and the lessee would have been entitled to an action of trespass, for any unlawful entry upon it; the proportion of the productions of the farm which the tenant was yearly to render, was a payment of rent in kind. They were not tenants in common in the crops and productions raised. The interest and property in the crops was exclusively in the tenant, until he had separated and delivered to the lessor his proportion. It might as well be said that the lessor would have been tenant in common in the crop, though he was to receive only every tenth bushel of grain as a rent. The interest in the *whole* crop, therefore, passed to the plaintiff.

3. The only remaining question is, whether the plaintiff is entitled to an action of trespass *quare clausum fregit*, for the loss of the crop. As he had an exclusive interest, I think the action will lie. The case of *Crosby* v. *Wadsworth* (6 *East*, 602.) was an action of trespass *quare clausum fregit*, and the court of K. B. held that the action was proper if the plaintiff had made out his alleged interest, which was to the exclusive enjoyment of a growing crop of grass, and to the right to cut and carry it away. The general language of the authorities is to this effect, that the grantee *vesturæ terræ*, or *herbagii terræ*, may maintain trespass, though he has not the soil. (*Co. Litt.* 4. b. *Com. Dig.* tit. *Trespass*, B. 1.) There are numerous authorities which support the general position, and which are referred to in *Crosby* v. *Wadsworth*, and in 1 *Chit. on Plead.* 176, 177.

The court are, accordingly, of opinion, that the plaintiff is entitled to judgment.

Judgment for the plaintiff.