## JOHN B. ODIORNE *vs.* JONATHAN COLLEY.

Mere naked possession, without some kind of property, will not enable a person to maintain trover.

To constitute a valid attachment of personal estate, it must be taken into the possession, or be placed under the control of the officer.

While such an attachment subsists, the property cannot be duly attached by another officer; but a second attachment should, in such case, be made by the first officer.

If the property has been delivered to a receipter, and he assent to the doings of the second officer, the second attachment is still invalid.

THIS was trover for a quantity of merchandize.

The cause was tried in this county, at February term, A. D. 1819, under the general issue.

It appeared in evidence, that on the 17th June, 1817, a writ of attachment was sued out by *Wells and others, vs.* one *Hayford*, and, on the 30th of the same month, was delivered to the present plaintiff, then a deputy sheriff, to be served.

The plaintiff immediately proceeded to the residence of *Hayford*, and there ascertained, that, on the 2d of June, A. D. 1817, the defendant being also a deputy sheriff, had attached the goods of *Hayford*, which are the subject of the present action, and, after removing them to the house of one *Gilman*, had delivered them into his custody, and taken his receipt to return them on demand, or pay their value.

The plaintiff then called on *Gilman*, and requested him to detain the goods for the benefit of the plaintiff as well as of the defendant, which *Gilman* verbally promised to do; and the plaintiff thereupon made a return on the writ in his hands, that he had attached the goods subject to a prior attachment by the defendant.

The attachment, made by the defendant, was upon two writs, which were duly entered, August term, 1817; but on one of them there became a nonsuit, and on the other, though judgment was recovered, yet no execution was sued out till more than thirty days afterwards.

A new suit was commenced by the party, who became nonsuit, and, on the 14th of August, 1817, before the thirty days above mentioned had expired, the same goods were again attached upon it by the defendant; were removed from *Gilman's* custody; his receipt cancelled; and the possession of the goods has since been withheld from the plaintiff.

Odiorne
*vs.*
Colley.

On these facts a verdict, by consent, was taken for the plaintiff, for the value of the goods, subject to the opinion of the court on further advisement.

The cause having been continued nisi, judgment was rendered in Rockingham, September term, A. D. 1819.

*Claggett & J. Smith*, counsel for the plaintiff.

*M'Intire*, (of Maine,) *& Mason*, for the defendant.

WOODBURY, J. Though possession alone will sometimes enable a party to maintain trespass; yet trover will not lie without evidence of property in the plaintiff. 1 *Chitt. Pl.* 150.—2 *Saund.* 47.—1 *N. H. Rep.* 110.—11 *John.* 529.— 13 *John.* 289.—14 *John.* 352.—15 *John.* 207.

Because in trespass, if the plaintiff had only the naked custody of the articles, he ought not to be disturbed in it by any body but the owner; and hence may recover for the mere injury to his possession against a wrong doer. While in trover, which is not predicated on a disturbance of the possession of the plaintiff, but on a conversion of his property, the plaintiff must prove his property in the articles, and also a right to the present custody of them.

Among the different kinds of evidence of property, peaceable and exclusive possession by the plaintiff is one; yet that is only *prima facie* evidence, and in this case was not proved by the plaintiff. He never saw the goods in dispute, except when they were in the custody of *Gilman*, the receipter of the defendant. *Gilman* never parted with that custody; and though he verbally promised to retain them for the benefit of the plaintiff, after the claims of the defendant were satisfied; yet he did not so retain them, but, before the expiration of thirty days after judgment upon one of the first attachments, returned the goods into the possession of the defendant. The plaintiff next relies upon his attachment of the goods as sufficient evidence of property to maintain trover.

If his attachment was a valid one, he undoubtedly could now sustain the present action; because he would have acquired a special property;(1) and the two prior attachments by the defendant being afterwards dissolved, he would, also,

(1) 1 N. H. Rep. 289.

Odiorne
*vs.*
Colley.

have a right to the immediate possession of the articles attached.

But the doings of an officer in respect to personal estate cannot amount to a valid attachment, unless the articles are taken into his actual custody, or are placed under his exclusive control.   1 *Wils.* 44.—9 *John.* 132.—5 *Mas. Rep.* 157, 163, 271.

In respect to real estate, reasons exist for less strictness.(1) By actual custody and exclusive control, we do not mean, that an officer must touch or remove every article, before the attachment can be deemed valid, but that the articles must be so within his power as to enable him to touch or remove them ; and to prevent a dissolution of the attachment, they must, in due season, be inventoried, and constantly retained under the absolute dominion of himself, or an agent.   1 *Lord Ray.* 251.—7 *Mod.* 37.—2 *D. & E.* 596.—1 *Es. Ca.* 205.—15 *John.* 428.—12 *Mass. Rep.* 131, 495.

Such a power over these articles the plaintiff never possessed, either *de jure*, or *de facto*.

He could not possess it, *de jure* ; because, at the time of his attempted attachment, the goods were *in custodia legis*, having been taken on two prior writs, and, after a removal, left in the possession of an agent of the defendant.   Those writs were then in full force ; and it seems well settled, that property, once in the custody of the law, cannot be re-seized by another officer, unless the first seizure was informal ; (4 *D. & E.* 651, *Farr vs. Newman*†) or fraudulent ; (*Holt* 643, *Backhurst vs. Klinckard.*—4 *D. & E.* 640.—7 *Mod.* 37.— *Bac. Ab.* "*Sheriff,*" *N.* 4.—14 *John.* 87.—14 *Mass. Rep.* 190, —*Bridge vs. Wyman et al.*) or, at the time of the second seizure, had become dissolved.

This follows, as a necessary inference, from the doctrine before mentioned concerning the validity of an attachment. Because neither the actual custody nor exclusive control of the same articles can, at the same time, exist in two distinct persons ; and hence, while the first officer retains this pow-

(1)2 John. 420.
—9 John. 103.
—13 Mass.
Rep. 128.*

---

* 16 John. 288.       † 17 John. 128.

er, the second officer is without it, and can make no valid attachment. To say, that the second officer has a subordinate power, is to say, that he has not enough to constitute a valid attachment. To say, also, that the possession of property by one deputy sheriff is, in law, the possession of it by another deputy, is to carry beyond the reason of the principle and into flagrant absurdities the maxim, that the sheriff, with his deputies, constitute but one person. This maxim means only, that the sheriff is, in a civil action, responsible for the official acts of his deputies, as if they were his own acts. *Cowp.* 65, 391.—2 *D. & E.* 154—*et auth. passim.* Hence a writ, delivered to a deputy for service, is considered as a writ delivered to the sheriff, so far as to render the sheriff responsible for the service ; and an escape permitted by a deputy is considered as permitted by the sheriff. But such delivery or escape is not a delivery or escape in respect to another deputy ; and it was never seriously apprehended, we believe, that an arrest or attachment by one deputy became *ipso facto* an arrest or attachment by another absent deputy on another precept.

Precepts in this state are directed to the deputy as well as to the sheriff, and the deputy acts in his own name, which, not being the case in England.(1) increases here the difficulties of the construction contended for by the plaintiff.

His construction would, also, lead to infinite confusion and inconvenience.(2) Nor is it at all necessary for the protection of creditors. Because, if the property attached exceeds in value the demand contained in the first precept, a second precept can be delivered to the officer who served the first one, and he, with equal benefit to creditors, and in perfect consistency with principle, can make a second attachment subject to the first attachment.*

The next inquiry is, whether a delivery of the goods to a receipter, who engaged to return them on demand, or pay their value, was such a relinquishment of power over the goods as to dissolve the first attachments made by the defendant.

(1) Cowp. 65.

(2) 13 Mass. Rep. 116.

* 17 John. 116.

Odiorne
*vs.*
Colley.

This contract of the receipter was in the usual form, and only expressed in writing what the law would imply without writing against any servant or agent of the officer, who might by him be entrusted with the custody of the goods. It was merely written evidence of a bailment; and, in a neighboring state, has been held to vest no property whatever in the receipter or agent.

(1) 1 N. H. Rep. 289.

(2) 11 Mass. Rep. 215.—13 ditto 295.

(3) Hobart 207.—Cro. El. 504.

But, in this state, we have held, that it vests a special property, subordinate, however, to that of the sheriff.(1) The sheriff still retains, in law, the power to control the goods, and at his pleasure may retake them into his personal custody.(2) Indeed, the sheriff himself continues alone responsible for them to both debtor and creditor. The receipter could not, by any arrangement with the plaintiff, convey to him an interest in the goods, so as to make the second attachment valid. The sheriff himself has no power to sell goods attached, except at public auction.(3)

Consequently, he could convey no such power to the receipter. *Nemo plus juris in alium transferre potest, quam ipse habet. Pothier Con. pt.* 1, *N.* 7.

But, as we have before remarked, the receipter only promised to retain the goods for the plaintiff, subject to the rights of the defendant; and as the defendant, before the first attachments were dissolved, rightfully demanded and received the goods from the receipter, the arrangement became a mere nullity.

The plaintiff, therefore, never possessed, either *de facto* or *de jure*, that power over these goods, which is necessary to constitute a valid attachment. And the dissolution of the first attachments at a subsequent time could, by no relation or fiction, strengthen and ratify what was a mere nullity.

*Verdict set aside, and plaintiff nonsuit.*