## JOTHAM MOORE *vs.* WILLIAM GRAVES, jr.

An infant, under the age of twenty-one years, may be legally deputed by the sheriff to serve and return a particular writ of attachment.

The validity of the acts of an officer *de facto* can be questioned only by those, whose persons, or whose property have been directly affected by those acts.

Goods, attached by a person specially deputed, to serve and return a particular writ, are in the custody of the law, and cannot be again attached by another deputy sheriff.

TRESPASS *de bonis asportatis.* The case was tried here, upon the general issue, at October term, 1825, when it appeared in evidence, that one *John M'Neil,* having sued out a writ against one *Isaac Jones,* the sheriff of this county deputed the plaintiff to serve the same. The deputation was on the back of the writ, and was as follows :

" I hereby constitute and appoint *Jotham Moore,* to serve " and return this writ, according to law.

" Witness my hand and seal, this 11th day of April, 1822, " at the risk of the plaintiff.          " B. P., sheriff."

There was also on the back of the writ a certificate, as follows :

" April 12, 1822. Then *Jotham Moore* made oath, that " he would serve and return this writ, according to law.

" Before me,          " J. B., justice of peace."

Moore
*vs.*
Graves, jr.

At the time *Moore* was so appointed, and when he served and returned the said writ, he was an infant, under the age of twenty-one years.

*Moore*, being thus deputed, by virtue of the said writ, attached the goods mentioned in the plaintiff's writ, and caused the same to be locked up in a store, on the 12th of April, 1822.

On the 18th April, 1822, the defendant, being a creditor of the said *Isaac Jones*, sued out a writ in his own name against *Jones*, which he delivered to a general deputy of the same sheriff, duly deputed ; and after being notified, that the said goods had been attached, as aforesaid, the said *Graves* and the said general deputy, by direction of said *Graves*, broke open the said store, and attached the said goods, and caused them to be removed, by virtue of the said writ in favor of said *Graves*.

On the part of the defendant, it was objected, that the plaintiff, being an infant, was incapable of exercising the office of deputy sheriff ; that the deputation and oath were informal and void ; and that the plaintiff, being a special deputy, the defendant, with a general deputy, had a right to attach and remove the goods, and hold them subject to the attachment made by the plaintiff, if that attachment was legal. But a verdict was taken, by consent, for the plaintiff, subject to the opinion of the court, upon the foregoing case.

*Burnam & Woodbury* for the plaintiff.

*Story*, for the defendant.

RICHARDSON, C. J., delivered the opinion of the court.

The defendant claims a new trial, in this case, on two grounds. In the first place, he contends, that the attachment made by the plaintiff, was void, and, therefore, gave him no right to hold the goods. In the second place, he urges, that, admitting the attachment to have been valid, a general deputy of the sheriff had a right to take away the goods, and hold them, by virtue of other legal process, against the same debtor, subject to the attachment made by the plaintiff, who was only a special deputy.

It is said, that the attachment, made by the plaintiff, was void, for two reasons ; 1st, because the plaintiff was an infant, and, by law, incapable of exercising the office of a

deputy sheriff; and 2dly, because he was not duly commission-ed and sworn as a deputy.

The first question, then, to be decided is, whether the plaintiff, being an infant, was, by law, capable of discharging the duties, which he was, in this instance, deputed to per-form? It is not necessary, in this case, to decide whether he was capable of doing all the duties of a general deputy; his authority being special and limited, it is enough for this case to decide the question, whether he was, by law, capa-ble of doing the particular acts, which his commission au-thorized him to perform?

The real question, then, involved in this point, is, whether an infant is, by law, capable of discharging the duties of a deputy of the sheriff, specially deputed to serve and return a particular writ of attachment?

There are provisions in our constitutions, which declare persons, of certain ages, incapable of holding certain offices. These provisions have been adopted, because it has been generally supposed to be contrary to sound public policy to commit particular offices to the inexperience of the young, or to the decay of faculties, which so frequently attends the last years of the aged. By the constitution of the United States, no person can be president, who has not attained the age of thirty-five years; nor a senator, who is under the age of thirty years; nor a representative in Congress, until of the age of twenty-five years. And by the constitution of this state, it is provided, that no person shall be capable of being elected a senator, nor be eligible to the office of governor, who is not of the age of thirty years. It is also further de-clared by the same constitution, that " no person shall hold " the office of judge of any court, or judge of probate, or " sheriff of any county, after he has attained the age of " seventy years."

And some of our statutes deny to persons, of certain ages, the exercise of particular powers and privileges, which are granted to others. Thus, by the statute of June 23, 1815, the right of voting in any public town meeting in any matter, that may come before a town, is given only to persons of the age of twenty-one years. So, by the statute of July 2, 1822,

the power of disposing of real estate by will is denied to infants ; and it seems, from the language of that statute, that they are incapable of being executors or administrators.

Nor were the imbecility and inexperience of early life disregarded by the common law. For it seems always to have been held, that an infant could not be a juror. *Coke Litt.* 157, *a.—Littleton, sec* 259.

So he could not be an attorney of a court ; (*Coke Litt.* 128, *a.*) nor administrator of an estate ; (*Lovelass* 5.—*Godolphin* 102,) nor could he act as executor, until he arrived at the age of seventeen years. *Lovelass* 161.—*Godolphin* 103.

So it was always held, that an infant could not execute the office of a judge. *Croke Eliz.* 636, *Scambler vs. Waters.*—*Coke Litt.* 3, *b.* and *note* 15.—*T. Jones* 127.—2 *Lev.* 245.

It has also been decided, that an infant could not hold the office of clerk of a court, where it was part of the duty of the office to receive the money of the suitors. 5 *B. & A.* 81, *Claridge vs. Evelyn.*

But, notwithstanding these disabilities, there are many things, which can be legally done by an infant. He is made, by statute, liable to do duty in the militia at the age of eighteen years.

By the common law, an infant was capable of discharging the duties of an executor at the age of seventeen years. 5 *Coke* 29, *Pigot's case.*

It is also well settled, that females of the age of twelve, and males of the age of fourteen years, may dispose of personal property by will. *Bingham on Infancy* 77.—1 *Pickering* 239, *Deane vs. Littlefield.*

It has long been held, that infants were capable of holding certain ministerial offices. *Cro. Car.* 555, *Young vs. Fowler.*—2 *Roll. Ab.* 153.—*Com. Dig.* " *Officer,*" *B.* 3.—*Cowper* 220, *Rex vs. Carter.*—*Cro. Car.* 279, *Young vs. Stoell.*

In England, the office of sheriff was in some counties formerly hereditary, and consequently might have descended to an infant. 1 *Bl. Com.* 339.—*Cro. Car.* 556.—9 *Coke* 97.

So an infant may be, it seems, a captain in the army. 8 *D. & E.* 578, *Hands vs. Slaney.* And it was held, that an infant might be an attorney to deliver seisin ; because the act was merely ministerial. *Co. Litt.* 52, *a.* and *note* 332.

Moore
*vs.*
Graves, jr.

So it was anciently holden, that an infant might be the keeper of a goal ; and the statute of Westminster 2, (*cap.* 11,) was construed to extend to an infant gaoler, so to charge him in an action of debt for an escape of one in execution. *Bingham on Infancy* 73, 108.

Upon a thorough examination of the adjudged cases, which bear upon the question we are now considering, we are satisfied, that the principle, they establish, is, that some offices can, and some cannot, be held by infants. Offices, where judgment, and discretion, and experience are essentially necessary to the proper discharge of the duties they impose, are not to be entrusted in the hands of infants. But they may hold offices, which are merely ministerial, and which require nothing more than skill and diligence.

The plaintiff, in this case, was deputed to serve and return a writ. The service of the writ required an arrest of the body, or an attachment of the goods of the debtor. The return required nothing more than to send the writ to the court, when and where it was returnable, with a true statement upon it of his doings. The service and return seem, therefore, to be acts as merely ministerial, as any that can be conceived.

We are not aware, that the appointment of an infant in this instance could in any way have been detrimental to the public. Had the deputy, by virtue of the writ, arrested the body of a stranger, or taken the goods of a third person, the sheriff might have been compelled to pay all damages, in an action of trespass. *3 Wils.* 309, *Saunderson vs. Baker.*— *1 Mass. Rep.* 530, *Grinnel vs. Phillips.*—17 *ditto* 244, *Campbell vs. Phelps.*—*Doug.* 40, *Ackworth vs. Kempe.*—*2 W. Black.* 832.—*Hammond N. P.* 82.

Nor was the debtor without ample security for any injury, he might sustain, from the acts or from the negligence of the deputy. Nothing can be more unquestionable, than that the sheriff stands responsible for his deputies in both these respects.

With regard to the deputy himself, there seems to have been nothing in the nature of the duties, he was deputed to perform, which subjected him to hazards, to which an infant

ought not to be exposed. There was no greater responsibility in the discharge of those duties, than what is every day thrown upon young men, under age, in the employment of traders and mechanics, and in various other situations.

For these reasons, we are of opinion, that the attachment made by the plaintiff cannot be held to be void on the ground, that he was incapable of holding the office of a special deputy in this instance.

But it is also contended, that the attachment was void, because the plaintiff was not duly commissioned, and sworn, as a special deputy. Whether this objection is well founded in fact, it is unnecessary to inquire in this case. For we are well satisfied, that this defendant is not in a situation to question the regularity of the appointment. The commission, which the plaintiff received, and the oath which he took, were clearly sufficient to make him an officer *de facto*, and to shew, that he was not a mere usurper ; and it is well settled, that the acts of an officer *de facto* bind all strangers, and that his authority can be questioned by those only, whose persons or whose property are directly affected by his acts. 10 *Mass. Rep.* 301.—10 *Mod.* 288.—1 *Hawk. P. C. B* 1, *cap.* 8, *sec.* 3.—9 *Johns.* 135, *M'Instry vs. Tanner.*—2 *N. H. Rep.* 202, *Johnson vs. Wilson.*—1 *Salk.* 96.—*Moor* 112, 606, *Costard vs. Wingate.*—10 *Mod.* 64.—15 *Mass. Rep.* 170.— *Cro James* 552, *O'Brian vs. Knivan.*—*Cro. Eliz.* 699, *Harris vs. Jays.*—*Andrews* 163, *The King vs. Lisle.*—2 *Strange* 1090, S. C.—7 *Johns.* 549, *The People vs. Collins.*—15 *Mass. Rep.* 180.—2 *Mod. Rep.* 193, *Ipsley vs. Turk.*—2 *Lev.* 184, S. C.—*T. Jones* 81, S. C.—9 *Mass. Rep.* 231, *Fowler vs. Bebee.*—13 *East* 55.

Neither the property, nor the person of this defendant, have been directly affected by the acts of the officer. He is a stranger to the process, under which the goods were taken, and comes in voluntarily to question the validity of an attachment of another's goods. It is most clearly enough to make the attachment valid, as respects him, that the person, who made it, was a deputy *de facto*, and not a mere usurper.

We are, therefore, of opinion, that the attachment cannot be held invalid on this ground.

Being thus of opinion, as we are, that the attachment was legal, it becomes necessary to determine the question, whether the defendant had a right, notwithstanding, to take away the goods, and hold them, subject to the first attachment ?

We consider it as settled in this state, that goods, which are held by virtue of a subsisting attachment, by one general deputy of the sheriff, cannot be legally attached by another deputy. 2 *N. H. Rep.* 66, *Odiorne vs. Colley.* But an attempt has been made to distinguish the case now before us from that case, by the circumstance, that the deputy, who in this case made the first attachment, was only a special deputy, and had only authority to serve the writ, by which he made that attachment. Whereas, when an attachment of goods is made by a general deputy, he has authority to receive other writs, and make other attachments, subject to the first ; which cannot be done by a special deputy. We have thought, that this circumstance deserved consideration ; but on the whole we have come to the conclusion, that it cannot be a proper foundation for an exception to the general rule. For it appears, upon examination, that the rule is founded, not upon the circumstance, that a second attachment may be made by the same officer, but upon the absurdity and inconvenience that must ensue, if, when one officer has the legal possession of goods, which are already in the custody of the law, another officer might be permitted to disturb that possession. 5 *Mass. Rep.* 271, *Watson vs. Todd.* —13 *ditto* 114, *Vinton vs. Bradford.*—14 *ditto* 269, *Thompson vs. Marsh.*—16 *ditto* 420, *Denny vs. Warren.*

At common law, goods seized on an execution could not be seized by the same sheriff on another execution. 1 *Show.* 169, *Bachurst vs. Clinkard.* But we permit the same officer to make a second attachment, and to seize the same goods, on a second execution ; and this is the utmost extent, to which the rule has ever been carried ; and we think this the utmost extent, to which it can ever be carried with safety and convenience.