*Court of Common Pleas, Dauphin County, February 7th,* 1854.

MUMMA, GUARDIAN OF GOTTSHALL, ETC., *v.* HARRISBURG, PORTSMOUTH, MOUNT JOY, AND LANCASTER RAILROAD.

When a railroad was laid out during the lifetime of a deceased person, but no damage was done till after his death, the guardian of his minor children is the proper person to sue for those damages, even if the property had been sold after they were done.

BY THE COURT.—To this report of viewers and assessment of damages numerous exceptions have been filed. The first is in the nature of general errors, and amounts to nothing. If defects exist they must be specified. The second and third, whether the guardian is or is not the proper person to institute these proceedings in the name and for the use of his ward, depends on the facts of the case. It appears from the evidence, that this railroad was located through the premises of William Gottshall on the site of an old turnpike. In the fall of 1849, stakes were set along the road, indicating the extent and location of the cutting and filling in to constitute the grade. Much of the general grading of the road was done that fall; but on the *locus in quo* none was required, as the surface of the turnpike was adopted as the bed of the railroad. A culvert was partly dug on these premises that fall and the following spring; but neither that work nor striking in the stakes by the engineers did any substantial injury to the land. Mr. Gottshall died on April 7th, 1850, and after his death the railroad company laid the cross-ties, filled in the ballast, and constructed the railroad, which was completed during the spring and summer. All the witnesses agree that nothing was done on these premises during the decedent's lifetime, which did any injury whatever. The road was completed and first commenced to be used long after his death. The principle is clearly settled that for trespasses committed to the freehold during a man's lifetime, a right of action accrues to his personal representatives, who would have been the proper persons to sue for all damages so done; but on his death the freehold at once descends to his heirs, in the absence of any will, and all trespasses committed afterwards are against their property. If the common-law remedy by action was permitted here, and the executors of Gottshall had brought trespass, they could have recovered at most but nominal damages. There was not even an entry on the premises of the decedent in his lifetime. The stakes were stuck in the turnpike, the right to the soil of which passed by grant to the railroad company. The culvert we understand to have been excavated on the margin of the road, and to have done no injury. The fences were removed and road constructed after his death. It seems to be settled in two reported cases, Schuylkill Navigation Company *v.* Thoburn (7 S.

[Mumma, Guardian of Gottshall, etc., *v.* H., P., Mt. J. and L. R.R.]

& R. 411) and Zimmermann *v.* The Union Canal Company (1 W. & S. 346), that the damages should be completed before the proceedings are instituted, and should be commenced and carried on in the name of the then owner. The act of Assembly in that case was worded substantially like the one under consideration. William Gottshall made a will by which an interest, with the right to exclusive possession of these premises, were given to his widow until the youngest child attained full age, provided she remained unmarried; this was in lieu of dower. But the evidence clearly shows that she renounced the bequest, and refused to take under the will; and that this was done under the advice of the executors. The real estate then descended immediately to the heirs, as the widow's interest was divested by her own act. The law cast both the right and the possession on the heirs. They remained in the actual possession, so far as we know, during the whole time the defendants were constructing that part of the road which substantially injured the freehold. On the 31st of March, 1851, the executors of Gottshall sold this land under an order of the Orphans' Court for the payment of debts; at that time the road was completed, and the legal presumption is, that the property sold for so much less as it was injured by the railroad, including all danger of future damage from the mode of travel by locomotives, and all accidents therefrom. These minor children being the owners of the premises when the injury was done, are the proper persons to sue, through their guardian or next friend, notwithstanding the sale, which took place without their consent. But even in the case of a voluntary sale, a man shall have trespass for a wrong done before. 2 Roll. 569, I. 20. A tenant for years may maintain trespass after he has quit the premises for an injury to the growing crop. 5 Binn. 285; 9 John. 108; 4 Mass. 266. These principles I have scarcely ever heard controverted, and the point appears to have been recently decided by the Supreme Court at Pittsburg. Had this been a common-law action, the suit should have been commenced in the name of the minors by their guardian. But the petition, although in the guardian's own name, yet sets forth those of his wards, and claims for them. Therefore it is substantially right. It would have been improper to include the name of the widow in a common-law action of trespass, as she is only entitled to dower out of the premises after her renunciation, and could not maintain trespass for an injury done to the freehold. She is not seized of an undivided part with the heirs. Hobart, 181; 9 Mass. 13. She has no interest in or right to the freehold, until her dower is assigned to her. It may be true that the heirs recover a portion of these damages for her use, but she has no interest in them till after recovery. Therefore her name was very properly omitted in the proceeding. The only remaining exception relates to the amount of damages.

[Gambers, for the use of Parry, v. Robinson.]

Although in a proper case this court will refuse to lend its sanction to an assessment of damages which appears to be exorbitant or made on wrong principles, yet we must have evidence before us to show that the inquest was in error. The only circumstance urged here to show it, is the amount paid for the premises by William Gottshall, in 1845, and the sum for which they were sold in 1851; whilst on the other hand it appears that very considerable improvements were made after his purchase, probably sufficient to more than cause the difference; and the court is well aware that property was generally on the increase in value during that whole period. We must rather trust to the opinion of the inquest, composed of practical men, who viewed the premises, than set up our own judgment, unaided by personal inspection or definite evidence to correct it. We think there is no error in this proceeding, and therefore direct the report of the inquest to be affirmed.

*Mumma, for plaintiff.*

*Lamberton, for defendant.*