## SUPREME COURT.

### Philip Pfanner agt. August Sturmer.

Where a lease of a farm was made to the plaintiff by the lessor, for one year, with the privilege of five years from the eighth of April, 1868, which term was to end at the end of each year, if the same was sold any time during said term without notice.

*Held*, that the lease was practically one at will, and the duration of the tenancy was so uncertain, that on a sale of the premises in January, 1869, and possession given to the purchaser in April following, the plaintiff was entitled to *emblements*.

The defendant having taken possession of the farm on the first of April, and having harvested the wheat and rye which the plaintiff had sowed, *held*, in an action of replevin for the wheat and rye, that the plaintiff was entitled to recover.

*Fourth Judicial Department, General Term, January,* 1871.

*Present,* Hon. Joseph Mullen, *P. J.;* Johnson *and* Talcott, *JJ.*

Appeal from a judgment for the plaintiff in an action of replevin.

George W. Cothran, *for appellant.*

I. The material question arises upon the face of the lease. The demise from Scott to the plaintiff was "for and during the term of one year, with the privilege of five years from the 8th of April, 1868, which term will end at the end of each (either) year if the same is sold any time during said term, without notice."

(The phrase "*if the same is sold,*" undoubtedly refers to the demised premises.

And "*each year*" has reference to the *term* year.)

By the express terms of the lease the lessee has conferred the power upon the lessor to terminate the lease at any

time by a sale of the demised premises ; and he expressly stipulates that in case of such sale his " term will end at the end of such year."

It was perfectly competent for the lessor and lessee to enter into such a stipulation. Courts permit parties to make such contracts as they please, so long as they do not contravene any principle of law ; and surely no principle of law is violated by this lease.

The lease is the voluntary act of the parties ; and the defendant has a right to insist, for aught that appears, that the lessor would not have made the lease had not this right been reserved to him.

The lease amounts to an agreement that the lessee may have the use of the demised premises for a period not to exceed five years, providing the lessor does not, in the mean time, sell such premises ; and in case of a sale, *the lessee's rights are to terminate at the end of the term year in which such sale is made.*

This clause is susceptible of no other reasonable construction. And the court will not, on account of the apparent hardship to the plaintiff, resort to a forced or unreasonable construction, especially where the hardship is the result of the plaintiff's own deliberate act.

It is difficult to perceive where there is any " uncertainty" as to the rights of the lessor and lessee under this lease. The case narrows down to the simple proposition that having clothed his lessor with the absolute power to terminate his rights under the lease by a sale of the demised premises, the lessee has no reason to complain if the lessor avails himself of the power thus conferred, even though the result should be, a loss to him,—in other words, when he planted he assumed the responsibility of being able to reap. His right to reap depended on a contingency of his own creation. If the landlord sold he loses his crops *by his own act ;* as the landlord acts pursuant to an authority conferred by himself.

In this respect, this case is plainly distinguishable from all the cases involving the question as to the uncertainty of the time of termination of leases—depending upon lives, or the happening of certain events, which may or may not transpire, &c., &c.

It is well settled by authority that when there is no uncertainty as to the termination of the lease, or where the lease is terminated by the act or default of the lessee, the emblements pass to the lessor. (2 *Bl. Com.* 145, *marginal page*; *Taylor's Landlord and Tenant,* § 538; *Bain agt. Clark,* 10 *Johns.* 424; *Woodfall's Landlord and Tenant,* 238, 239, 240.).

The lessor having been empowered to sell the demised premises, and thus to terminate the rights of the lessee under the lease; and pursuant to such authority having sold the premises, the rights of the lessee thereby became extinguished, the lessor became entitled to the crops as emblements, and they were conveyed by the lessor's contract and deed to the defendant, as growing crops pass by an absolute conveyance. (4 *Kent's Com.* 549, *and cases cited in note.*)

The case of *Stewart agt. Doughty,* (9 *Johns.* 108,) on which the court below based its decision, is not an authority to sustain this judgment as a brief statement of the facts, and the question decided in it will show.

The lease was dated September 4, 1804, and was for six years from May 1, 1805—one half of the crops was to be given as rent. It contained a provision that either party might terminate it " on giving six months *previous* notice in writing, of such intention, to the other party."

The lessee took possession of the farm in May, 1805, and continued in possession until the last of February, 1809, when he removed from the premises in consequence of a written notice from the lessor to quit *in six months thereafter.*

In the autumn of 1808, the lessee sowed wheat and rye;

and in January, 1809, the wheat and rye were sold on an execution against the lessee.

The lessor refused to allow the purchaser to harvest the wheat and rye, and drove him off, and harvested them himself. The purchaser brought trespass *quare clausum fregit.*

The court held that the purchaser succeeded to the rights of the lessee, and that he could recover, because " the lessor did not intend by the notice to deprive the lessee of the crops already sown, for *the six months would not have expired until after harvest."*

The rights of the lessee would not terminate until the expiration of the six months, and before that time he could have harvested his crop.

In the present case the tenant's rights terminated on April 8, *before harvest.*

II. The action is what would formerly have been denominated an action of trover for a certain number of bushels of wheat and rye.

It is difficult to see how the plaintiff can recover the value of a quantity of *straw* under such a complaint, unless it be on the authority of a case that I am informed once transpired in New York city, where a man having been sued on a promissory note, employed an attorney to defend on the ground of usury, and the next thing he heard was that a judgment of divorce, *a vinculo,* was entered dissolving the marriage relation between himself and wife and awarding to her the custody of their child.

After having determined that the defendant was entitled to the value of the use of his land from April till harvest, and also the expense of harvesting, &c., the grain, to deduct therefrom the value of the straw, is to adjust an action of trover upon equitable principles.

The judgment should be reversed, and as the whole case is before the court, final judgment should be given.

P. G. PARKER, *for respondent.*

This is an action of replevin brought to recover a quantity of wheat and rye raised on a farm in Tonawanda. The facts in the case were stipulated, and the case tried by the court without a jury, at the circuit court, in Erie county, in March, 1870.

The plaintiff rented the farm in question of one Martin B. Scott, of Cleveland, Ohio, in April, 1866, by lease in writing for one year, " with the privilege of five years from the 8th day of April, 1868, which term will end at the end of each year, if the same is sold at any time during said term, without notice." The plaintiff went into possession of the premises under said lease, and continued in possession until April 8th, 1869; and during the summer of 1868 he prepared the soil and put in a quantity of wheat and rye. In November, 1868, said Scott sold the demised premises by contract to the defendant, and in January, 1869, conveyed the same to the defendant by deed containing covenants of warranty, and the defendant went into possession on the 8th of April, 1869. At the time the defendant purchased the premises he had no actual notice that the plaintiff owned the wheat and rye, but learned that he claimed the same between the time of purchase and receipt of his deed. The defendant harvested and marketed the wheat and rye, and realized therefrom $507, *including the straw;* the expense of harvesting and marketing was $166 90; the value of the use of the twenty-two acres of land on which the grain was grown from April 8th, 1869, until harvest was $77, leaving net balance of $263 10. Before the defendant commenced to harvest said crop the plaintiff forbade him interfering therewith, and while the harvest was going on this action was commenced, and the defendant gave the undertaking necessary for that purpose and kept and disposed of the grain.

Justice DANIELS directed judgment for the plaintiff for

said net value of the crop, and his reasons are given. The decision was right and the judgment should be affirmed.

I. At the time the seed was sown for this grain the lessee had a five years' lease of the premises, subject to the sale thereof by the lessor at any time during the term; and a sale would end the term at the end of the year in which it was made. The continuance of the tenancy for the entire term was thus subject to the will of the lessor, and the term being ended, by the sale, the lessee and plaintiff herein became entitled to the crops as emblements. (2 *Black. Com.*, 146; 4 *Kent's Com.*, 109; *Woodfall's Land. and Ten.*, 305 *to* 307; *Taylor's Land. and Ten.*, 4th ed., §§ 535, 538, *and notes; Stewart* agt. *Doughty*, 9 *Johns.*, 108.)

II. The defendant is entitled to no protection as a *bona fide* purchaser, the plaintiff's possession was sufficient notice to put him upon inquiry as to the plaintiff's rights. And besides the growing crops were not mentioned in the deed on the sale.

III. It was right to allow the plaintiff to recover for the value of the straw, $50. It was not necessary to mention straw in the complaint, for when replevied the wheat and rye was in the bundle and the straw was as much the plaintiff's as the kernels of grain, and the court did right in deducting the value of the straw from the expense of harvesting.

*By the Court*, MULLIN, P. J.—One Martin B. Scott, on the 21st of April, 1866, leased to the plaintiff certain premises in Erie county for one year, with the privilege of five years from the 8th April, 1868, which term was at an end at the end of each year, if the same was sold during said term without notice.

The plaintiff entered under this lease and during the summer of 1868, summer fallowed the soil and put in a quantity of wheat and rye.

On the 30th of January, 1869, the lessor sold and con-

veyed the premises so leased to the defendant, with cove-
nants of warranty, sufficient in form to carry to the pur-
chaser the growing crops. On the 1st April, 1869, defend-
ant entered into possession and harvested the crops and
applied them to his own use.

When defendant purchased the premises, plaintiff was in
possession of them.

The court ordered judgment for plaintiff for the value of
wheat and rye, after deducting the expense of harvesting
and the value of the use of the land from the end of the
year, until the removal of the crop. The defendant was
charged with the value of the straw in addition to the
grain.

To authorize the judgment in this case, the court must
have held that the duration of the tenancy was so uncertain
as to entitle the plaintiff to emblements.

In *Taylor on Landlord and Tenant* (§ 534), it is said this
privilege (that of emblements) is allowed to tenants for life
at will, or from year to year, because of the uncertain nature
of their estates, and lest they should be deterred from the
proper cultivation of their lands, and the general rule upon
this subject is, that if the term is so uncertain that the ten-
ant at the time he sows his crop, cannot know that his con-
tinuance will last until he shall have reaped it, he will be enti-
tled to the crop as emblements. But if his term is certain and
does not depend on a contingency, so that at the time he sows
the crop he may know that his term will not continue until
he shall have reaped it, he will not be entitled to it as em-
blements. (*Woodfall's Landlord and Tenant, 9th Eng. ed.,*
585; *Stewart* agt. *Doughty, 9 Johns.,* 108.)

The lease in this case, is practically a lease at will, the
only distinction between it and a lease at will is, that when
terminated it shall be at the end of a year. But whether it
shall continue in force for one or seven years, depends on
the will of the lessor.

Under such a lease the tenant could not know when he

Pfanner agt. Sturmer.

might be required to surrender possession. If he was bound to so cultivate the land as that the crop must be removed, in all cases, within the year ending on the 8th of April, he could not safely sow winter grain at all on the land, for if he did, he would lose the crop, should the lessor sell during the year, and thus the value of the lease be materially lessened.

The court was right in its construction of the lease, and in allowing the plaintiff for the value of the grain.

The action being replevin, and wheat and rye the only property for which a recovery is sought by the complaint, the straw could not be recovered for under it. The court has not directly given judgment for the straw, but it has done what is equivalent to it—it has deducted the value of the straw from the cost of harvesting the crop. This, it seems to me, cannot be done.

The judgment should be reversed, unless the plaintiff will stipulate to deduct from the judgment the $50 allowed him for the straw. If deducted, then the judgment to be affirmed.