SAILLY
v.
SMITH.

SAILLY *against* SMITH.

In trespass, *de bonis asportatis,* against a collector of the customs, it is a good justification that the goods were imported contrary to the non-intercourse act, whereby they became forfeited to the *United States.*

Or that the defendant, suspecting them to have been imported contrary to that act, seized them, and that they were condemned in the district court.

Whether a collector might, under that act, have entered and searched a dwelling-house without the warrant of a magistrate? *Quære.*

But he might take goods standing under a horse-shed, at a public inn, without warrant.

THIS was an action of trespass, *de bonis asportatis.* The defendant was collector of the customs for the district of *Champlain,* and the action was brought to recover damages for the seizure of certain dry goods specified in the declaration.

The defendant pleaded,

1. Not guilty.

2. That the defendant, as collector of the district of *Champlain,* seized the goods as forfeited; that they were, after the 2d of *March,* 1811, to wit, on the 1st of *March,* 1812, imported into the *United States* from *Lower Canada,* contrary to the statute of the *United States,* in such case made and provided, whereby they became forfeited to the *United States,* whereupon he seized the same, which is the same trespass, &c.

3. That the defendant seized the goods, (as in the 2d plea,) and detained the same for trial.

4. That the defendant, suspecting that the said goods had, since the 2d of *March,* 1811, been imported into the *United States* from a territory of *Great Britain,* did, on the 26th of *March,* 1812, at the district of *Champlain,* seize the same for trial; and that the same were, on the 21st of *August,* 1812, at a special district court, held at the city of *New-York,* by a decree of that court, condemned as forfeited, which decree still remains unreversed, &c.

5. That the defendant seized the goods as forfeited, and secured the same for trial; and setting forth the proceedings which were had in the district court from the filing of the libel, to the decree of condemnation.

6. That a libel was filed in the district court against certain goods; that such proceedings were thereupon had, that the same were, on the 1st of *August,* 1812, condemned as forfeited, which decree remains unreversed; and that the goods mentioned in the plaintiff's declaration are part of the goods specified in the libel; the defendant then stated the seizure on the 18th of *March,* 1812, traversing that he was guilty of the trespass at any other time, before that day, &c.

NEW YORK,
October, 1814.

SAILLY
v.
SMITH?

7. A similar plea, in answer to another count in the declaration.

8 and 9. Similar pleas, omitting the traverse.

To these pleas the plaintiff replied,

1. As to the 2d plea. That (admitting that the defendant was collector at the time when, and that as collector he seized the said goods, but protesting that the same were not forfeited or imported from *Lower Canada*) the defendant unlawfully seized the said goods from a certain sleigh of him, the said plaintiff, in which the said goods were standing, under and within a shed, in the night time, and without a warrant from a justice of the peace, in pursuance of the statute of the *United States*, in such case made and provided.

2. The like replication to the 3d plea.

3. As to the 4th plea. Admitting that the defendant was collector, and made the seizure, and that the said goods were condemned as forfeited, but protesting, &c. as in the replication to the 2d plea.

4, 5, 6, 7, and 8. Replications to the 5th, 6th 7th, 8th, and 9th pleas respectively, in which the plaintiff admitted the proceedings in the district court, as stated by the defendant, but protesting, &c. as in the replication to the 2d plea.

The defendant rejoined,

1. To the replication to the 3d plea. That at the time when the trespass is alleged to have been committed, one *Stephen Thorn* was one of the inspectors of the customs, for the district of *Champlain*, and that being such inspector, he took and carried away the said goods from a certain sleigh, in which they were standing under a shed, in the night time, and without a warrant, and that on the same day, he carried and delivered the same to the defendant, who then seized the same and detained them for trial; traversing that he had taken the same in manner and form as the plaintiff alleged in his replication.

2. To the replication to the fourth plea. That the shed under which the said goods were standing, was a common public horse shed, standing by and open to the public highway, belonging and appertaining to a certain public inn, or tavern, under which shed all persons driving, travelling, or passing on or along the said public highway, were in the practice of putting, and were, by the permission of the owner of the shed and inn, permitted to put, their horses, sleighs, and teams, and

NEW YORK,
October, 1814.

SAILLY
v.
SMITH.

to pass and repass into, and through the same, at pleasure; and that the said goods were in the said sleigh, in open sight, under the said shed, open to and adjoining the said public highway, and that the plaintiff had stopped under the shed to feed and rest his horses, wherefore the defendant seized and detained the said goods for trial, and such proceedings were thereupon had, as in his fourth plea is alleged.

3, 4, 5, and 6. Rejoinders to the replications to the 6th, 7th, 8th, and 9th pleas; putting the matter of those replications at issue.

To the replication to the 2d and 5th pleas, the defendant demurred, and the plaintiff joined in demurrer.

To the rejoinder to the replication to the 4th plea, the plaintiff demurred, and the defendant joined in demurrer.

To the rejoinder to the replication to the third plea the defendant *surrejoined*, putting the same at issue.

The demurrers were submitted to the court, without argument.

YATES, J. delivered the opinion of the court. The powers delegated by law to the defendant, as collector of the customs for the district of *Champlain,* are sufficient to authorize the seizure of the goods.

By the 8th section of "the act to interdict the commercial intercourse between the *United States* and *Great Britain* and *France,* and their dependencies, and for other purposes," "the collector, naval officer, surveyor, and other officer of the customs, shall have the like power, and authority to seize goods, wares, and merchandises, imported contrary to the intent and meaning of that act; to keep the same in custody, until it shall have been ascertained whether the same have been forfeited or not; and to enter any ship or vessel, dwelling house, store, building, or other place, for the purpose of searching for, and seizing any such goods, wares, and merchandises, which he, or they, may have by law, in relation to goods, wares, and merchandises subject to duty." This section is continued in force, by a supplementary act, passed the *second day of March,* 1811.

From the facts disclosed by the pleadings in this case, it is not necessary to decide whether the collector, by *law,* is, at all times, authorized to enter and search a dwelling house, without

first obtaining a *warrant* from a magistrate. This would be an extensive and highly important authority; and, if it does exist, ought to be used with great prudence and sound discretion, because it is liable to be abused; yet, public convenience, in many instances may require that it should be exercised. Cases, however, may occur when the officer may act unwarrantably, by proceeding without probable cause, to break open a dwelling house. His conduct, in such a case, would make him liable, notwithstanding the law, to remunerate in damages to the owner of the house. When, therefore, such suspicions exist, it would be a more correct course for him o apply to a agistrate, whose warrant would effectually protect him, and prevent the necessity of showing probable cause, afterwards, by other testimony.

In the case before us, no such precaution was requisite. The goods were taken out of a sleigh standing under an open shed. The collector, therefore, had a right by law to make the seizure, and to retain the goods in his custody, until it could be ascertained, by due course of law, whether they were forfeited or not. Admitting, then, that the facts stated in the replication to the second plea are true, and that the seizure was in the manner therein set forth, the law of the *United States* authorized it, and is a sufficient protection to the defendant in this cause.

The same reasons apply to the replication to the fifth plea, by which it appears the goods were condemned by a competent and proper tribunal, in fact, rendering the justification pleaded by the defendant still more conclusive.

The rejoinder to the replication to the fourth plea explains the facts stated in the replication, which, as efore mentioned, is wholly deficient, and contains no fact by which the defendant could be implicated and the plaintiff having committed the first fault, in pleading, so that no issue material to the controversy could be tendered y there must o judgment for the defendant on all the demurrers.

Judgment for the defendant.