### NEHEMIAH JONES *versus* ROBERT GIBSON.

In an action of trespass by an inspector, for taking goods by him seized in execution of his office, it is not necessary that he should prove that his appointment was approved by the secretary of the treasury, or that he was sworn into office.
An inspector is authorized to seize goods imported into the United States contrary to law.
If goods so imported are in a stage coach, an inspector may seize them without a warrant from a magistrate.

THIS was an action of trespass, for taking goods, and was tried on the general issue.

On the trial the plaintiff gave evidence, that in September, 1809, he was appointed an inspector of the revenue, by *Joseph Whipple*, the collector for the district of *New-Hampshire*, and had ever since been known as an acting inspector within the district ; but gave no evidence that his appointment was made with the approbation of the secretary of the treasury, or that he had been sworn to a faithful discharge of the duties of the office.    The plaintiff also proved that on the 9th of October, 1812, he seized the goods in question, which were of *British* manufacture, in a stage coach, under circumstances which justified a suspicion that they had been illegally imported into the *United States*, and deposited them in the house of the defendant by his consent. He also proved that the goods were afterwards tortiously taken from the defendant's house, by other persons, and secreted.    It also appeared in evidence that the defendant took the goods from the place where they had been so secreted, and delivered them to a person who represented himself the agent of the persons who claimed the goods as owners.

Jones
*vs.*
Gibson.

The court instructed the jury that, if they believed the evidence that was offered to prove these facts, they were bound to consider the plaintiff as an inspector duly commissioned and qualified to discharge the duties of that office. The jury were also instructed that the plaintiff, as an inspector, had authority by law to seize the goods as imported in violation of the laws of the *United States ;* and that the act of seizure, under the circumstances in this case, gave him an interest in the goods sufficient to maintain this action.

The jury were further instructed, that if the evidence satisfied them that the plaintiff seized the goods under the circumstances stated by the witnesses, and that the defendant took the goods from the place where they had been secreted by those persons who had wrongfully taken them from the plaintiff, it constituted a trespass in the defendant, and they ought to give the plaintiff a verdict for the value of the goods.

The plaintiff had a verdict, which the defendant now moved should be set aside, and a new trial granted, for a supposed misdirection of the court.

* Bell, J. The defendant in support of this motion contends that the evidence was not in point of law sufficient to prove that the plaintiff was an inspector, as it neither shew that the plaintiff was appointed by the approbation of the secretary of the treasury, nor that he was sworn into office.

He also contends, that admitting the plaintiff to have been an inspector, the laws of the *United States* gave him no authority to seize goods imported contrary to law ; but if, as an inspector, he had by law an authority to seize, it could only be done, in a case like the present, under the authority of a magistrate's warrant.

There seem to be pretty satisfactory reasons for considering the provisions relative to the approbation of the secretary of the treasury, and the oath to be taken by the inspector,

*Richardson and Woodbury, Justices, having been counsel, did not sit.

as merely directory, and not essential to the legal validity of the official acts of the person actually appointed by the collector, and *de facto* in office.

This opinion is strengthened by the provision of the statute imposing a penalty on the inspector for doing official acts before taking the oath prescribed by law. The official acts of an officer *de facto*, acting under those who have the legal right to appoint, but by an irregular or informal appointment, are valid when coming in question incidentally in all cases, unless expressly declared to be void by statute. It has been so decided even in capital trials, where the defence rested on a justification as an officer.

It is sufficient in all such cases to show that the act was done by a person *de facto* in office ; and the law intends, *prima facie*, that the person so acting was duly appointed and qualified as such officer.—*Barrymore* vs. *Wise*, 4 *T. R.* 366.—*The King* vs. *Holland*, 5 *T. R.* 607.—*The King* vs. *Gardner*, 2 *Camp. R.* 513.—*Potter* vs. *Luther*, 3 *John. R.* 427.—*The Commonwealth* vs. *Fowler*, 10 *Mass. R.* 30.— *Fenwick* vs. *Sears*, 2 *Cranch's R.* 268.—*Phillips' Ev.* 170. —*The United States* vs. *Batchelder*, 2 *Gal.* 15.

The case of the *United States* vs. *Batchelder* is most emphatically in point. It was an indictment for obstructing this plaintiff in making the very seizure in question ; and the circuit court expressly decided the question we are now considering in conformity to the instructions given to the jury in the present case.

In support of the doctrine that the law gives an inspector no authority to seize goods illegally imported, it is contended that all the powers vested by law in inspectors in relation to this subject are given by the act to regulate the collection of duties, &c., passed March 2, 1799, and the act interdicting commercial intercourse, &c., passed March, 1809. That the act of March, 1799, which points out and defines the duties of inspectors, gives them no power to make seizures, and that the 68th section of that act, which gives the power of making seizures, gives it only to the collector, naval

officer and surveyor, or other person specially appointed by either of them.

If the act of March 2d, 1799, vested no powers in, or required no duties of, inspectors, but such as are vested in, or enjoined upon them by the name of inspectors, this objection of the defendant would seem to be well founded.

A slight attention to the act of March 2d, 1799, is sufficient to show that other powers are given, and other duties are enjoined upon inspectors by the general provisions of this act, in addition to those expressly devolved upon them by the name of inspectors.

By the 70th section of that act it is made the duty *of the several officers of the customs* to seize goods liable to seizure by virtue of that or any other act which now is, or *hereafter may be, enacted* respecting the revenue. If, therefore, an inspector is an officer of the customs or revenue, he has by this act the same authority to make seizures which the collector himself has.

An inspector is an officer—his appointment as such is expressly provided for by the revenue laws—and all his duties have relation to the execution of the laws respecting the revenue, or customs. That such an officer should be comprised within the general term, *officers of the customs,* must be admitted, if the words are to be understood according to their usual meaning.

Upon looking through this act it seems perfectly clear that an inspector is regarded as an officer of the customs. In the 46th section this officer is called an inspector of the customs. In the 49th section we find the words, *any inspector, or other officer of the customs.* In the 53d section we find the expressions, *inspector, or other officer of the revenue.* In the 73d section it is provided that if any inspector or other officer shall certify, &c. There are several other sections in this act in which inspectors are recognized as officers of the customs or revenue.

It has been said that as congress has, by an act passed since this cause of action accrued, expressly declared that inspect-

Jones
vs.
Gibson.

ors are to be considered officers of the customs, it is to be inferred that the legislature did not consider inspectors officers of the customs under former laws. If this inference were correct, it would become necessary to consider how far a court of law ought to be influenced by a legislative opinion of the legal construction to be given to the words of a statute. This would be a question not difficult of solution; but it is unnecessary to consider it in this case, as there is no sufficient reason to justify the supposition that the legislature entertained the opinion, that by former laws inspectors were not considered officers of the customs. When we recollect that in some districts it was said to have been decided that inspectors were not officers of the customs, and could not make seizures, whilst in other districts contrary decisions had taken place, we might, with greater probability of being right in our conjectures, consider the last act of the legislature as a mere legislative exposition of the meaning of the former act, rather than as evidence of an intention to change the law. That the legislature intended by the act of March 2d, 1799, to give inspectors the right of making seizures, is inferable from the consideration that it would be impossible to execute the revenue laws on any other construction.

The other officers of the customs, if inspectors are not considered as such, are few in number, and necessarily confined to their offices in the principal commercial towns. It is impossible to suppose that the legislature expected that this small number of officers could execute the revenue laws throughout a country, the mere outline of whose territory amounts perhaps to eight or ten thousand miles.

The 69th section of the act of March, 1799, provides that the collector shall have the custody of all goods which are seized; and it is said that this provision is inconsistent with the plaintiff's claim to the possession. This construction of the law would confine the right of seizing to the collector alone, and would render the law totally inefficient. The true construction of this provision is, that all other

officers of the customs who make seizures, shall, as soon as may be, deliver over the goods seized, to the collector. The seizing officer has of necessity a right to the possession so long as is requisite to convey and deliver them over to the collector.

It is contended that congress could not have intended, by the act of March, 1799, to give inspectors the right of making seizures, because they did not require that they should give bonds for a faithful discharge of the duties of the office, and that we cannot suppose that the legislature would invest persons with the right of taking into their custody property to an indefinite amount, without providing some security for its return, if wrongfully taken. Arguments of this kind are entitled to little consideration when opposed to the plain, unambiguous language of a statute. They are entitled in this case to less than in ordinary cases, because the legislature, by the act of February, 1815, have expressly declared that inspectors are to be accounted officers of the customs, and yet have not required that they should give security for the faithful discharge of the duties of their office. This must be taken to be a distinct expression of the opinion of the legislature that such a provision was not required, and takes away the whole ground on which this argument of the defendant rests. In conformity to this construction of the statute of March, 1799, it has been expressly decided by the circuit court, that an inspector is an officer of the customs, and as such has a legal right to seize goods imported contrary to law.—*United States* vs. *Sears,* 1 *Gal. Rep.* 220.—*United States* vs. *Batchelder,* 2 *Gal. Rep.* 15.

The defendant contends that if the plaintiff was an officer of the customs, and as such was invested with the same power to make seizures as the collector himself, yet he could not in this case seize, unless by virtue of the warrant of a magistrate, because the act of interdicting commercial intercourse with *Great Britain,* &c., under which this seizure was made, refers to the act of March 2d, 1799, for the powers of the revenue officers in relation to seizures. The

act of March 2d, 1799, provides that no search by the officers of the customs, for the purpose of making seizures, shall be made in any ship, vessel, dwelling house, store, building or other place, unless by virtue of a magistrate's warrant.

It is argued by the defendant that the stage coach in which these goods were conveyed was under the protection of these acts, so that it could not be lawfully entered by the defendant to make a seizure without a warrant. This stage coach, it is said, is to be deemed " a building, or other place," within the intent of the statute.

The object and general intent of the legislature is in all cases to be regarded in putting a construction on the language of statutes. The words, " other place," in the act in question, following the words " ship, vessel, dwelling house, and store building," cannot mean other place in the most general and extensive sense of the words. In this general sense of the words, every material object must occupy such place. If the legislature had intended to prohibit searches for the purposes of making seizures in every case without a warrant, they would have said so in general terms, without particularly mentioning places. The words, " other place," are evidently used in a restricted, and not in their most extensive sense. Other place, in this case means, other like place ; that is, place substantially the same with the places mentioned in connection with it, having in view the motive and object which induced the legislature to prohibit an entry into those places without a warrant. This prohibition of entering certain places, for the purpose of searching for and seizing goods without a magistrate's warrant, was clearly intended to guard individuals against improper intrusion into their buildings, where they had the exclusive right of possession and privacy, under the pretext of searching for goods subject to seizure ; and the words, "other place," mean other place, where the occupant has this exclusive right of possession and privacy. A stage coach is not such a place. A passenger in a stage coach has no such exclu-

sive right of possession, as is contemplated in this provision of the act, he has only a right in common with others, only a right to the spot he occupies so long as he continues to occupy it. That this is the true construction of this provision of the law is assumed as the ground of decision in the case of *Sailly* vs. *Smith,* 11 *John. Rep.* 500. That was an action of trespass against a collector for seizing goods imported contrary to law, from a sleigh standing in an open shed, without a warrant. And the court decided that a warrant was not necessary.

Upon a deliberate reconsideration of these questions, I find no reason to doubt the correctness of the instructions given to the jury on the trial.

*Judgment must therefore be rendered on the verdict.*

*Noyes* for the plaintiff.

*Atherton* for the defendant.

The chief justice and justice *Woodbury,* having been of counsel on a former trial, did not sit in this cause.