## BEAN *v.* THOMPSON & *a.*

When no return has been made upon a warrant calling a town-meeting, the court, on satisfactory evidence, will permit the selectmen, who ought to have made the return, to supply the omission, and the town clerk for the time to amend the record accordingly.

The regularity of the election, or the qualification of officers *de facto,* cannot be questioned collaterally.

A sale of the lands of non-residents for taxes must appear by the record to have been made to the highest bidder.

A deed of land, described as "ten acres of lot No. 70, in the second division of lots in D.; also sixteen acres in lot No. 63, in the second division of lots in said town," is void for uncertainty.

TRESPASS, for breaking and entering the plaintiff's close, on the 7th of July, 1846, in Danbury, in said county, " containing ten acres, known as the Kidder lot, being a part of lot No. 70, in the second division of lots in said Danbury," and cutting and carrying away a quantity of grass, &c.

It appeared in evidence that the trespass complained of was committed on a piece of land containing from five to eight acres, known by the name of the " store lot," situated on the east side of said turnpike ; that said lot was enclosed, and on one side of it was a store, fronting said turnpike ; that a small portion of said " store lot" was, in fact, a part of lot No. 63, in the second division, but the whole of it was included within the boundaries set forth in the writ.

It appeared, also, that those covered other land besides the "store lot," but no trespass was proved upon any except on that lot.

It appeared also that the plaintiff had occupied the " store lot " for a year previous to the date of the alleged trespass.

The defendants then showed a legal title to said lot in one Susan Evans, on the 30th of November, 1842, who never parted with her title, but died in July, 1845, leaving two children, her legal heirs. These heirs being of full age,

in June, 1846, sold the grain growing upon the lot to the defendants, who cut the same.

The plaintiff then contended that he had acquired a legal title to the lot by virtue of a deed to himself from Philbrick Curtis, collector of taxes of Danbury for the year 1842, dated October 11, 1844, and recorded March 14, 1846.

The description of the land in the deed is as follows:

" Ten acres and one half of lot No. 70, in the second division of lots in said Danbury, and also ten acres of lot No. 63, in the second division of lots in said town, being that part of said lots taxed to Elliott J. Kidder."

The deed was excepted to as being void for uncertainty.

It appeared that Elliott J. Kidder was taxed in the non-resident list for the year 1842, for ten acres and a half of lot No. 70, in the second division, and for ten acres in lot No. 63, in the same division, but no description of the land was given. It appeared by parol evidence that about twenty-six acres of said land in said lot, including the " store lot," were commonly called the Kidder land.

To show the regularity of the proceedings, by virtue of which said deed was authorized to be given, the plaintiff introduced the warrant calling the annual meeting in March, 1842. No return of the posting up of the warrant appeared to have been made, but the court, upon being satisfied that the facts would warrant the return to be made, permitted the selectmen for the year 1842, to make a return on the warrant, showing the meeting to have been duly notified, and the town clerk for that year to amend his record accordingly. To these amendments the defendants excepted.

It appeared that the county and State taxes were legally authorized and voted for that year (1842,) and the record of the town clerk, to show that the town taxes were properly voted, was introduced, and Elliott J. Kidder appeared to have been taxed to the amount of $2,16, upon the pieces of land above described. This appeared from the original invoice.

Bean *v.* Thompson.

Article 6th in said warrant was " To choose three select-men for the present year." Upon that article the following record was made : " Voted Timothy H. Danforth, Moses Currier and John S. Rand as selectmen, and *was* sworn." To this it was objected that it did not appear that the select-men, by whom the above tax was assessed, were duly and legally qualified, and the assessment was, therefore, void.

The record, in regard to the choice of collector, was as follows : " Voted Philbrick Curtis collector of taxes for 1842, and was sworn." To this, also, it was objected that it did not appear that said collector was legally and duly qualified, and his doings were, therefore, void. The town clerk for that year appeared to have been qualified in a similar way, and a similar exception was taken.

The record of the sales of the non-resident lands for the year 1842, was as follows :

" A true amount of the sale of non-resident lands and buildings in Danbury, for taxes assessed upon the same in the year A. D. 1842, sold at public vendue, holden at the inn of James Smith, Esq., in said Danbury, January 27th, 1843 :

|  | Number of lot. | Division. | Quantity. | Value. | Amount of taxes. | Taxes and costs. | Taxes and costs two days. | Name of purchasers. | No. of acres sold. |
|---|---|---|---|---|---|---|---|---|---|
| Elliot J. Kidder, | 70 | 2 | 10½ | 76 | 75 | $2,19 | $2,86 | Folsom Bean. | 10½ |
| Elliot J. Kidder, | 63 | 2 | 10 | 76 | 75 | 2,19 | 2.86 | Folsom Bean. | 10 |

The above vendue stands adjourned till to-morrow morn-ing at 10 o'clock, A. M.

Jan. 28th, 1843, met according to adjournment, and sold as above.

PHILBRICK CURTIS, Collector and Vendue Master.
ICHABOD S. JOHNSON, Clerk."

It was objected that it did not appear that the land was

sold to the highest bidder, nor the amount for which it was sold, nor the expenses of the sale, nor that an attested copy of the above was delivered to the town clerk within ten days of sale.

Various other proceedings were shown, tending to prove that the requirements of the statute had been complied with.

The defendants then proved that Barney & Forsaith, partners in trade, occupied said " store lot " and store, under said Susan Evans, and her grantees, for the year 1842, and were taxed for the same as follows: " Six acres in lot No. 70, in the second division, $400."

The defendants then offered to prove by the selectmen of that year, that in making said invoice they included the whole of said " store lot."

A verdict was taken by consent for the defendants, on which judgment is to be entered, or the verdict is to be set aside and a new trial granted, as the opinion of the court shall be upon the whole case.

Woods, J. The plaintiff, to maintain his action, relies upon a collector's deed, against the validity of which several objections have been urged.

1. No return appearing upon the warrant calling the town meeting at which the tax was voted and the officers chosen, the persons who had been selectmen in 1842, and whose duty it had been to make such return, were, upon motion, and upon satisfactory evidence that the facts would justify them, permitted by the court to make the proper return, and the town clerk for that year had leave also to amend the record accordingly.

Leave is often granted to officers, whose returns of their doings, or records of public transactions, are by law made evidence, to correct errors or to supply omissions, to conform to the truth. The interest which the public have in the correctness and fullness of the record, and the responsibility of the officer himself for the accuracy of his own doings, are

primarily a good cause for granting such indulgences tending to the promotion of reasonable objects. And it has never been deemed an objection to the amendment of a return or a record, that proceedings were pending which might be affected by it, except that where rights or claims *bona fide* have intervened, amendments that would entirely defeat them, have in some instances been denied.

The extent to which such claims would be regarded, in settling applications to amend the returns and records of town officers, was discussed somewhat in *Gibson* v. *Baily*, 9 N. H. Rep. 168, in which case it was held, in substance, that where the record contains enough to lead to a reasonable belief that all that was necessary was done, and that a correct record might have been made, the purchaser, having access to such records, should take the land subject to the right of others, whom it might concern to have the record amended.

We think this case falls within the principles there laid down. The warrant itself was recorded, with evidence on its face of having been seasonably issued. The meeting was held in pursuance of its exigency, and a record of the meeting accordingly made up. All the facts stated in the return might reasonably be presumed by any one searching the records for information, and that the omission to enter such return upon the warrant, was not owing to the omission of the formal acts, of which the return would have furnished evidence. It appeared to the court of common pleas that these formalities were complied with, and they correctly allowed the amendments.

2. Another exception relates to the official oaths of the selectmen and collector. The question is similar to that which arose in *Cardigan* v. *Page*. But the subject was adverted to in the later case of *Tucker* v. *Aiken*, 7 N. H. Rep. 113, in which the doctrine is laid down, that the regularity of the election, or the qualification of an *officer de facto*, who is in, under the color of an election, cannot be drawn

Bean *v*. Thompson.

in question in an action to which he is not a party. Nothing more is necessary than to show that the officers were such *de facto*, according to the definition given in that case. In *Pike* v. *Hanson*, 9 N. H. Rep. 491, the action was against the selectmen, for an illegal assessment. It was therefore necessary that they should show themselves qualified in all respects to make an assessment.

3. But there is no evidence that the sale was made to the highest bidder. This is imperatively demanded by the statute, and the want of the proper evidence that the land was so sold, was in *Cardigan* v. *Page*, before cited, considered a fatal defect in the proceedings. 1 N. H. Laws 564.

4. Another fatal defect in the title, is a total want of an intelligible description of the premises in the deed; an objection which equally applies to the tax-bill to which the descriptive part of the deed refers. The latter was not in conformity with the law, which requires land so situated to be particularly described. N. H. Laws 556. But the exception taken is to the deed, which, upon well known and familiar principles, is void for uncertainty. It neither contains within itself an intelligible description, nor refers to any thing else which aids in identifying the land sought to be conveyed. There must be

*Judgment on the verdict.*