## Baker *v.* Shephard.

Where the authority of selectmen comes incidentally in question in an action where they are not parties, it is sufficient to show they were acting officers.

An article in a warrant for a town meeting to choose all necessary town officers, is sufficient to authorize the choice of an agent to build a road.

The selectmen have power to appoint agents to build roads, and their warrant is sufficient evidence of such appointment.

By the laying out of a public highway, the public acquire no right to use the trees growing upon the land to build or repair the road.

In this case the parties agree as follows in regard to the timber which is the subject of this action :

The timber was taken within the limits of a highway, duly laid out by the town of Holderness, over lands of the plaintiff and others, adjacent thereto, if the officers of said town were duly elected and authorized for that purpose. Previous to the taking, the damages awarded were duly tendered by the town to the plaintiff. The taking of the timber was done by the defendant in making the highway, and while acting under the authority and votes of the town, and by a warrant of the selectmen as an agent for building said new highway. The timber was cut within the limits of the highway, which was not wider than the public required for the travel, and within the limits of the part so cleared, and was used by the defendant in the construction of the road ; some of it on the plaintiff's land, and some of it on lands adjacent, not belonging to the plaintiff, and it was used reasonably,

Baker *v.* Shephard.

if by law the defendant might use it for such purposes, either on the plaintiff's land, or on lands adjacent to the plaintiff's. Two of the three selectmen assisted the defendant in doing what he did, as before stated in this case, in the construction of said new road, working out upon it the taxes assessed against them in the list accompanying his warrant. The other selectman, being informed by the defendant that he was unwilling to commence said work upon the plaintiff's land until the damages for taking his land were tendered him, on the day before the defendant commenced the construction of the road, made the tender before mentioned. The proper officers of the town, after the completion of the road, settled the defendant's account for building the same. The warrants for the town meetings at which the selectmen were chosen who laid out the road, and at which the selectmen were chosen who issued the warrant to the defendant to collect money and build the road, and at which the defendant was chosen agent to build the new road, were posted at the town house, and " at the stage office of J. H. Thompson, in said town." In one of the returns this was further described as " being a public place." The stage office, so called, in Holderness, where a copy of the warrant was posted, was a shoemaker's shop, and also a place where stages called to take and leave passengers and parcels. The only article in the warrant for the town meeting, which could be supposed to authorize the appointment of an agent, was " to choose all necessary town officers for the year ensuing." The warrant above referred to was under the hands and seal of the selectmen, addressed to the defendant, as " agent for the town for building a new highway," describing it, requiring him to collect certain sums mentioned in a list annexed, in labor, and apply the same in building said new highway, and to settle his accounts with the selectmen.

A verdict was taken for the plaintiff, subject to the opinion of the court.

*Quincy,* for the plaintiff.

1. The town meeting at which the selectmen who laid out the road were chosen, was not legally notified, one of the notices

being posted at a stage office, so called, which was not a public place. *Tidd* v. *Smith*, 3 N. H. Rep. 180.

2. There was no article in the warrant by which the town was authorized to appoint the defendant an agent to build the road.

3. The defendant had no legal right to use the timber sued for in the construction of any portion of the highway, more especially beyond the limits of the plaintiff's land. *Makepeace* v. *Worden*, 1 N. H. Rep. 16 ; *Avery* v. *Maxwell*, 4 N. H. Rep. 37 ; *Mills* v. *Stark*, 4 N. H. Rep. 513 ; *Hopkins* v. *Crombie*, 4 N. H. Rep. 525 ; *Robbins* v. *Boorman*, 1 Pick. 122 ; *Adams* v. *Emerson*, 6 Pick. 57.

*Bellows*, for the defendant. By the Revised Statutes, chap. 34, § 4, agents are named among town officers. It is not material whether the agent was legally chosen or not. The road might be built by the selectmen, or by any agent they might employ. It is enough that the person employed acted by the direction of the officers of the town, and this is abundantly shown by the case. The article to choose all necessary town officers was sufficient. It is the usual form. The stage office was a public place, and the meeting therefore legal. But if this were otherwise, the selectmen who laid out this road were officers *de facto*, and their acts valid as to third persons.

Although the public have only an easement, they have a right to all that is necessary to the full enjoyment of that easement. They may cut down trees on the land, remove gravel and rocks, and dig drains ; and in the case of a turnpike company, dig a cellar, and erect a toll house in the limits of the highway. *Tucker* v. *Jones*, 9 Pick. 109. The right to use the wood, so cut down for making the roads, has been exercised from time immemorial, as the great extent of "corduroy" roads attests. It has been used as freely as other materials, such as gravel and stone. It may be well held that the phrase, *other material*, as used in chap. 55, § 15, of the Rev. Stat., includes the trees. This is merely declaratory of the law before existing. Towns may pur-

chase such materials as lumber, &c., but that is necessary when none is found on the land.

Selectmen always estimate the loss of the materials in their award of damages, and have, no doubt, allowed for these trees. There is no distinction in the nature of things between sand, and gravel, and trees. Roads cannot be built without using the gravel, &c.; and the statute regulates the removal of such materials; before that, it was always the practice to use such materials without restriction.

Sand and gravel are named, but timber is not more material or important. The New York Revised Statutes provide that all trees, except such as are needed to repair the highways and bridges on the land, shall belong to the owner of the land; 3 Kent's Com. 433; assuming what we say, that the trees necessary for that purpose may be used in making the road. The Massachusetts Revised Statutes, chap. 24, § 10, provide that the commissioners shall allow the owner a reasonable time to remove his timber, wood and trees, otherwise they will be deemed relinquished to the town. 17 Pick. 287.

The cases cited by the plaintiff do no not conflict with our views.

*Quincy,* in reply. An agent of this kind is not a town officer, but a mere special agent, and the town have no authority to elect such agent under the general article.

The defendant's counsel assumes that there has been an immemorial usage for towns to take trees for their roads, and that the selectmen in fact appraised these trees. Neither of these is found by the case. We deny both. The argument then has no basis.

The question is, if it is necessary to use the wood to build the road? The public authorities have a right to open the highway, and to remove the earth and trees, because the easement cannot be enjoyed without it. That is all they can do as to the trees. There is no necessity to use the trees in making the road. The

cases we cite, settle that the owners have a right to the trees, herbage, mines, &c.

It is easy to suppose cases of abuse, if the trees may be thus used, such as roads laid out for the purpose of getting the timber.

BELL, J. The objection that the selectmen were not duly elected, is not well founded. It is enough in a case where the authority of selectmen comes incidentally in question in an action in which they are not parties, to show that they were acting officers, and the regularity of their election cannot be made a question. *Horn* v. *Whittier*, 6 N. H. Rep. 94; *Jones* v. *Gibson*, 1 N. H. Rep. 268; *Johnston* v. *Wilson*, 2 N. H. Rep. 205; *Londonderry* v. *Chester*, 2 N. H. Rep. 268; *Morse* v. *Calley*, 5 N. H. Rep. 522; *Tucker* v. *Aiken*, 7 N. H. Rep. 113.

The only article which can be regarded as authorizing the choice of an agent by the town, is the general article, " to choose all necessary town officers," &c. Though an agent for building a road is not, perhaps, in strictness a town officer, yet we think the article in this form gives sufficient notice that one of the objects of the meeting is to choose the persons to transact the business of the town; and that under it, not only the usual town officers may be chosen, but any committees or agents whose services may be required. It has never been held, that we are aware, that a stage office, like that described in the case, is a public place within the meaning of the statutes regulating town meetings; nor is it necessary now to decide it. The case fails to furnish the proper materials for such a decision, since a place may be justly deemed a public place in one town, which would have no claims to that character if the question arose in a place of greater population and business. In the case of an agent for building a new highway, an appointment by the town would be by no means necessary. It would be enough to show that he was appointed by the selectmen, as the prudential agents of the town. Of such an appointment, the warrant stated in the case would be satisfactory evidence, because he would be the agent rather of

the selectmen than of the town. So would be their recognition of him as agent, or their settlement or allowance of his accounts as such agent. The evidence of this kind found in the case is entirely sufficient.

The principal question in this case was left undecided in *Make-peace* v. *Worden,* 1 N. H. Rep. 116 ; where the court say, " In highways laid out through the land of individuals, the public has only an easement—a right of passage ; the soil and freehold remain in the individual whose lands have been taken for that purpose. *Perley* v. *Chandler,* 4 Mass. 434. Towns whose duty it is to make roads and keep them in repair, have a right to cut trees growing in highways, so far as that is necessary to the performance of that duty. Whether towns have a right to use trees thus cut in the construction of the road, is a question not necessary to be settled in this case." And we are not aware that it has since arisen till the present case. The general principle, that the public has only an easement, or right of passage, in the highways laid out through the land of individuals, and that the title to the land, and all the profits to be derived from it consistently with the right of way, remain in the owner of the soil, has been recognized in the cases cited in the plaintiff's argument, in 4 N. H. Rep.

In Massachusetts, in *Adams* v. *Emerson,* 6 Pick. 57, which was an action for taking thatch from part of the land laid out for a turnpike, by a servant of the turnpike corporation, it was held, that the place, though part of the road, was the soil and freehold of the plaintiff. He has the exclusive right of property in the land, subject to the easement or right incident to a public highway ; such as the right of passage over it, and the right to construct a convenient pathway, and to keep it always in good repair. To accomplish these purposes, the corporation may dig up and remove from place to place, within the limits laid out for the road, any earth, sand and gravel ; and may dig or cut up sods or turf ; but it by no means follows that the corporation have the right of herbage, which is the exclusive property of the owner of the soil, as well as *all trees, mines,* &c.

In *Barclay* v. *Howell*, 6 Peters 498, it was held, that the fee of the soil over which a public road passes remains in the original owner, and the *timber* and grass upon the surface, and the minerals below it, are his. 3 U. S. Dig., 663, § 372. In *Jackson* v. *Hathaway*, 15 Johns. 447, it is held, that highways are regarded in our law as easements. The public acquires no more than the right of way, with the powers and privileges incident to that right; such as digging the soil, and using the *timber* and other materials found within the space of the road, in a reasonable manner, for the purpose of making the roads and bridges. The former proprietor still retains his exclusive right in all mines, quarries, springs of water, timber and earth, for every purpose not incompatible with the public right of way.

By the Revised Statutes, chap. 55, § 14, surveyors of highways shall purchase all such timber, plank and other materials, as are necessary for repairing the highways and bridges in their respective districts, at the cost and charge of the town; and by sect. 15, every surveyor shall have power within his district to remove any gravel, sand, rocks or other materials from the travelled part of any highway therein, without damage or injury to the adjoining land, to any other part of the highway in said district, for the purpose of repairing and grading the same.

The language of the Revised Statutes, and the somewhat conflicting views of the courts in the decisions cited in other States, leave the question very much where it was left by the court in *Makepeace* v. *Worden*, undecided.

The general principle seems clear, that the agents of the community have the right to use gravel, sand, rocks, and other materials composing part of the land laid out for the road, or found upon its surface, any where within the limits of the highway as laid out, for the purpose of making or repairing the road. So it seems clear, that such agents have the right to remove any such materials which come in the way of the road, and to cut down and remove any trees which grow in the part of the land laid out which is to be wrought for the travelled path, and any which it is necessary to remove, in order to the construction and repair

of the travelled path, in a reasonable and proper manner.  The question is, whether the trees growing upon the land laid out for a highway are all to be deemed materials subject to the same rules as sand, gravel, &c., liable to be cut down at the discretion of the agent for building the road, and to be used for the repairs of the road.  If they are not, then the question is whether the agent or surveyor has a right to cut down any trees, growing in the highway land, except such as it is necessary to cut down and remove for the purpose of building and repairing the road in a reasonable and proper way; and whether the trees properly cut down for this purpose can be deemed materials, and applied, at the pleasure of the agent or surveyor, to the construction or repair of the travelled way.  If the rule had been settled long ago, it would probably have made little difference in which way it was decided; since in all those cases in which the question could arise, the appraisal of damages would have been made with reference to the rule established by the decision; and as to future cases of laying out, it would, for the like reason, be of no great importance.

It is, on the whole, a question of convenience.  If it had arisen for decision in the early settlement of the State, when it was every where forest, and it was the practice to use wood in constructing causeways, the balance of convenience might very probably have been in favor of considering the wood and timber as materials liable to be used in making or repairing the road, and of course to be regarded in appraising the damages.  No occasion seems to have arisen for deciding the question, and it now comes up for consideration when the situation of things, as regards this question, is entirely changed.  A great part of the ancient forest is gone.  Timber and wood, through most of the State, have greatly increased in value, so as to be often double, and sometimes five and ten fold the value of the land on which they grew, after it has been stripped of its growth; and they have generally ceased, except in the newest settlements, to be used as a common material for making or repairing any part of the highways, except the bridges.  These changes render it much less desirable for the community that timber should be

regarded as a road material, like sand and gravel, and greatly increase the objections which must always exist to the adoption of that view.

It must always, where timber and wood are valuable, be more convenient and satisfactory, as well as more economical, for towns to purchase the precise kind and quality of lumber which they require for the use of their roads, as they have occasion to use it, than to acquire an interest by appraisal in the trees growing in the highways, without its being known at the time whether they will be suitable or not, if wanted, or whether they will ever be wanted, particularly if we assume, as we are bound to do, that the appraisal will be honestly made.

It must be always very difficult to do justice, either to the town or to the owner, in estimating the damages to be awarded for the timber. It would seem to be indispensable, to prevent injustice to the land owner, that all the wood and timber upon the land should be considered and allowed for in the appraisal of damages, as all of it is liable to be taken and applied to the uses of the road, if any part is so; while, in most cases, there must be very little likelihood of its being so used. Such a principle would be attended with great hardship and injustice to towns.

It could hardly be expected that the entire value of the timber should be allowed, because it would be obvious to the officers laying out the road that it would hardly ever be all wanted, or all suitable to be used. If, under the influence of this consideration, less than the full value were allowed, there is no rule by which the damages can be estimated, since those who make the award would rarely if ever be the persons by whose judgment the trees would be used; that being a matter dependent upon judgment or caprice of the road-maker or surveyor, of whose opinions or course of conduct no previous estimate can be formed; so that, on the one hand, the town may be compelled to pay for trees which the road builder may never use, and on the other, these agents may think fit to use an amount of wood and timber which the authorities who laid out the road never expected, nor would themselves have approved of, and which of

course was not estimated in the appraisal of damages, nor paid for to the land owner.

It is not easy, upon this view, to lay down any definite rules in relation to the relative rights of the public and the land owner to the timber, after a road has been laid out. The right to use the trees growing upon the land may be supposed to be limited to such use in the original construction of the road, or to continue indefinitely to allow their use in making repairs. If the right was to be deemed limited to the first construction of the road, this would make an essential difference between trees and all other materials found upon the land, since, beyond question, the latter remain always liable to be used for repairs. Such a difference would furnish the strongest argument against the trees being regarded at all as road materials. If the trees remain indefinitely liable to be taken and used for repairs, it must be difficult to settle the relative rights of the public, and of the land owner. At what time, and under what circumstances, may the owner apply the trees to his own purposes? If at his own pleasure, then he may take at once to his own use the same property for which the town has just paid him. If not at his own choice, how long is he to wait, and whose license must he obtain in order to cut and use them with safety? If the surveyor may always cut them when he pleases, and he does so after their value has been increased by the increased scarcity of wood, and after the mere saplings have grown with age to lofty trees, how is the owner to be compensated for his interest in their increased value? The appraisal must have been made of the trees as they were. Their increased size and value is derived from their being permitted to occupy and draw their nourishment from the soil of the land owner; to the profits of which, subject to the public easement, he is exclusively entitled. Can the trees be taken and applied to the public use without allowing him any thing for their increased value? For how many years may the public leave the trees, in which they are supposed to have a right, to grow upon the highway, and thus deprive the owner of the profits of his land? It is this circum-

stance, that the increase of growing timber makes a part of the natural profits of the soil, which marks a clear line of distinction between the trees and the inanimate sand and gravel, which are always materials liable to be used upon the highways.

At the present day we are able to perceive but a very inconsiderable public convenience in holding that trees are to be regarded as materials, liable to be used for the purposes of roads, while the inconveniences, the uncertainties and hardships, both to the towns and land owners, arising from that view, seem to us far to exceed and outweigh the supposed conveniences.

We are therefore of the opinion that, by the laying out of a public highway, the public acquire no right to use any trees or timber growing upon the land for the purpose of building or repairing the road; and that the only right they acquire in relation to such trees, is that of cutting down and removing to a convenient distance, for the use of the owner, such trees as it is necessary to remove in order to the making or repair of the road in a proper and reasonable manner. In this conclusion we are supported by the ancient authorities. Bro. Abr. Chimin, p. 10; 1 Rolles' Abr. 392, Chimin Private, B. pp. 1 and 2.

In an highway the king hath nothing but the passage for himself and his people. But the freehold and all the profits, as *trees*, &c., belong to the lord of the soil. 8 E. IV. 9; 2 E. IV. 9; 8 Hen. VII. 5, b; 1 Rolles' Abr., 392, Ch. pr. B. 4. If trees grow in the highway, he to whom the seigniory of the leet of the same place doth belong shall have the trees. 27 H. VI. 8. Bro. (Abr., Leet, pl. 3,) understands leet here means soil. Ib. 5. Generally the owner of the soil of both sides of the way shall have the trees growing upon the way. 18 Eliz., B. R. *per curiam;* Woolrich on Ways 6; 1 Burr. Rep. 143.

The defendant consequently was not justified in using the plaintiff's trees, and there must be

*Judgment on the verdict.*