## BIXBY v. HARRIS, APP'T.

A party has his election to bring either case or trespass against a military officer, for a seizure of his goods, or an arrest of his person, by virtue of a warrant to collect a fine, illegally issued by such officer.

Upon an appeal from a justice of the peace, no question can be raised upon the legality of the judgment rendered by the justice.

The authority of a person appointed and commissioned as a military officer, and who has assumed the office, and acted as such, cannot be questioned by third persons, because he has not taken the oath of office. He is an officer de facto.

The powers and duties of an officer who has resigned, continue till his discharge is communicated to him.

An appointment of a military officer is inoperative until there is a vacancy, either by the discharge, &c. of the incumbent, or by his acceptance of an incompatible office.

CASE. The action was brought before a justice of the peace against the defendant for issuing, on the 13th of June, 1850, illegally and without right, a warrant against the plaintiff for the collection of a military fine, for non-attendance at the May training, 1850, and for committing said warrant to one L. F. Jewell, clerk of the 4th company in the 13th regiment of New Hampshire militia, who afterwards, on the 17th day of the same June, arrested the plaintiff by virtue of said warrant, and held him in custody three

hours, and until he paid the fine and costs, amounting in all to $5,62.

The defendant pleaded the general issue, with a brief statement in justification, that the defendant, at the time of the arrest, was captain of said company, duly qualified and acting according to law. The action was continued before the justice, by the agreement of parties, when judgment was rendered for the plaintiff for $6,87 damages and $12,61 costs, amounting in all to $19,48, from which judgment the defendant appealed to this court.

The facts were agreed by the parties to be as follows:

During the year 1849, one David Harris had acted as captain of said company, though he had never been qualified as such by taking the oath of office required by law; and this fact was known to the company and to the parties in this suit. The said David Harris had been lieutenant of said company, duly qualified in 1848, but when he was appointed captain in 1849, Nathan Harris, the defendant, was appointed lieutenant in his place, and was duly qualified by taking the oath of office as such, and acted in that capacity. Some time in March, 1850, David Harris resigned his commission as captain, and recommended Nathan Harris, the defendant, to that office. The resignation of said David Harris was accepted by the proper authorities, and he was duly discharged; and the defendant was appointed and commissioned as captain of said company. Said David's discharge and the defendant's commission as captain were both dated on or about the 29th day of March, 1850. The fact of said David Harris' resignation as captain, at the time of it, was known to the company, and to the parties to this suit. The said David's discharge and the defendant's commission as captain were sent to the adjutant of the said regiment, where they remained uncalled for till May 11, 1850, the Saturday before May training, when the defendant, Nathan Harris, got his commission, and was qualified by

taking the oath of office, and commanded the company on May training day as captain.

The said David Harris, on the first day of May, 1850, issued the usual company orders, signed by him as captain, to the sergeants of said company, to warn the soldiers to said May training, and the sergeants, acting under these orders, warned said company, and among the rest the plaintiff, by a notice in common form, and the plaintiff did not appear at said training. No other company orders were issued by any other person but those issued by the said David Harris.

And it was agreed that judgment should be rendered for the plaintiff for damages and costs, if the court should be opinion, that upon these facts he is entitled to maintain an action, and in this form; otherwise, for the defendant for costs.

*Herbert*, for the plaintiff.

*Sargeant*, for the defendant.

BELL, J. The principal objection insisted upon in this case is to the form of the action, but we consider it settled in this State, that where the goods of a person are seized, or his person is arrested to compel the payment of an illegal tax, or of a tax illegally assessed, the injured party has his election to treat the wrongful assessment as the cause of the injury and to declare in case, or to regard the seizure or the arrest by the collector as the act of the selectmen and declare in trespass. *Walker* v. *Cochran*, 8 N. H. Rep. 166; *Gilson* v. *Fisk*, 8 N. H. Rep. 404; *Henry* v. *Sargeant*, 13 N. H. Rep. 321; *Osgood* v. *Blake*, 1 Foster's Rep. 550, and cases there cited.

The case of a seizure of property or of an arrest, by virtue of a warrant for a fine, illegally issued by a military

officer, is entirely undistinguishable in principle from the case of selectmen, and the same rule must govern.

Though the Revised Statutes provide that " an action on the case, and no other, shall be commenced against any sheriff, coroner or other officer, for any damages arising from any default or misconduct in his office," yet it has been repeatedly held that an officer who acts under a void or illegal warrant, is liable to an action of trespass, because what he does in the execution of such a precept is not a misconduct in his office, but an illegal act, entirely without the sphere of his official duties. *Osgood* v. *Blake*, 1 Foster's Rep. 550; and *Hills* v. *Hoyt* and *Perley* v. *Parker*, there cited.

If the Revised Statutes applied in this case, their only effect would be to compel the plaintiff to bring an action upon the case, as he has done.

An objection is made, in the argument, to the judgment of the justice, because the costs exceed the damages. But upon an appeal from a justice, no objection can be made to the judgment for any cause. The effect of the appeal is to vacate, for most purposes, the judgment below. The appeal is a continuation of the original suit, for the purpose of obtaining in the court of appeal a new trial and a new judgment. It is analagous in its effect to an award of a·new trial, by which the previous verdict is entirely set aside, and the case is to be heard anew, like an original action. *Wallace* v. *Brown*, 5 Foster's Rep. 216. The award of costs by the justice is of course immaterial, and costs are to be taxed in the court of common pleas, when the action is determined, agreeably to the provisions of the statute. No more costs than damages can be recovered against a captain for any thing done under such warrant, unless it is shown that the proceedings were wilful and malicious, or the costs were caused by continuances granted at the defendant's request, or by an appeal claimed by him. Neither of the two former causes are suggested in the case to justify

---

---

the taxation of more costs than damages upon the proceedings before the justice.

The remaining question relates to the authority of the defendant to issue the warrant, under which the acts complained of in this case were done. David Harris was appointed captain in 1849, and at the same time Nathan Harris, the defendant, was appointed lieutenant. D. Harris accepted the office of captain, and acted as such, but did not take the oath. N. Harris took the oath as lieutenant. By his acceptance of the office of captain, and acting as such, David Harris became captain *de facto*, and as between these parties, who are third persons and strangers, it is immaterial whether he was sworn or not. *Janes* v. *Gibson*, 1 N. H. Rep. 268; *Johnson* v. *Wilson*, 2 N. H. Rep. 205; *Londonderry* v. *Chester*, 2 N. H. Rep. 268; *Morse* v. *Calley*, 5 N. H. Rep. 222; *Tucker* v. *Aiken*, 7 N. H. Rep. 113; *Moore* v. *Graves*, 3 N. H. Rep. 413; *Merrill* v. *Palmer*, 13 N. H. Rep. 184. If he continued to hold in that way, the office of captain until after the orders had been issued for the company training in May, 1850, no objection could be made here on the ground of his want of legal qualification.

In March, 1850, D. Harris resigned, and his resignation was accepted on the 29th of that month; but the discharge remained in the adjutant's office, not communicated to him till May 11th, and he continued to act as captain till that time. No other person was qualified to act as captain, had any commission as captain, or assumed to act as such till that time. It seems to us he was captain *de facto*, that he continued to act *colore officii* until the notice of his discharge. If he was in error in supposing that he remained in office till his discharge was made known to him, still he must be deemed an officer *de facto*, and his acts binding on third persons, so long as he continued to act.

A discharge from office may be granted upon the application of the party, that is, upon his resignation. In many cases a discharge may be ordered *in invitum*, where no ap-

plication is made. In the last case, no one would suppose there could be any doubt as to the time when the discharge would take effect. Clearly, it would be when the discharge was made known to the party; and up to that time he would continue to be bound to discharge his duties. The same principle must apply when the officer resigns. His duties do not cease when he resigns. He cannot know the precise time when his resignation is accepted, unless he is personally present, which must be a very rare case. We suppose, therefore, there can be no doubt of the principle that an officer remains in office until his discharge is made known to him. In actual service, his position must be most perilous, if it were not so, during the interval between the acceptance of his discharge at Washington, and notice to him of that fact. He must continue to act at the peril of official liability for neglect until his discharge is signed. He must act afterwards in equal danger of civil and criminal liability.

The true rule in all cases of this kind is, we think, distinctly and emphatically laid down in the case of the deputies of the sheriff, in the Revised Statutes, ch. 178, § 7, which is but a revision of prior enactments. They are bound, under severe penalties, to serve all process which may be brought to them for service while they remain in office. They are under serious liabilities, if they act as such after they are discharged; not more severe or serious than the liabilities of military officers in actual service. To the deputy sheriff it was extremely necessary that the point of time should be definitely fixed when his powers and duties came to an end, and this is fixed by the statute. " Any sheriff may discharge from office any deputy by him appointed, by writing under his hand and seal, which shall be served by reading the same, or giving an attested copy thereof to the deputy so discharged." The discharge is effectual from the time of the service upon the deputy, and this is equally so whether the deputy is discharged for misconduct or at his own request. The resignation of the

deputy sheriff is made in the same manner as that of a military officer, and the effect is the same.  It is but a request to be discharged, which in no way affects the duties or liabilities of either, until the actual discharge is communicated to them.  This rule is distinctly laid down in the case of Justices of the Peace, in Comyns' Digest, Title : Justices of the Peace, A. 8.  " After a new commission (which operates as a supersedeas or discharge for those not named in it) an act by a justice of the peace in the former commission is valid till notice especially given to him, or the new commission be read at the sessions, assizes or in full county, or a sessions held by force of it; for notice to one justice is not sufficient for others." Bro. Com. 2, 6, 14, 18, 24; see 15 Vin. Ab. 19, Justices of the Peace (O) ; 2 Hawk. P. C. ch. 5, §§ 8, 9, 10, 11.

There is another view of this case which leads us to the same result.  If we adopt the idea that an acceptance of office and assuming to discharge the duties of it, do not make the party an officer until he has taken the oaths of office, the case stands thus : David Harris was appointed and sworn as lieutenant in 1848.  He was appointed captain in 1849, to fill a vacancy in that office; but having neglected to take the oath of office, there was no sufficient acceptance of that appointment to make him captain.  He had never resigned or been removed from the office of lieutenant, and, therefore, remained in that office, and as such was the commanding officer of the company.  If he had effectually accepted the office of captain, he would thereby have vacated the office of lieutenant, the two offices being incompatible with each other.  Having failed to do that, the appointment of Nathan was inoperative, there being no vacancy to be filled.  The orders of David Harris, issued by him as captain or commanding officer, in May, 1850, he being at that time the highest officer of the company, were binding and valid.  His authority ceased on the 11th of May, when he was notified of his discharge,

and Nathan Harris, being then appointed and qualified, assumed the command, and in due time issued the warrant, which makes the gravamen of this suit.

Upon either of the views stated, no objection appears either to his authority to issue it, or to the regularity of his proceedings ; and upon the facts before us there must be

*Judgment for the defendant.*