PEARSON *v.* WHEELER.    { DECEMBER 9, 1874.

When nothing appears to the contrary, it will be presumed that what a witness states is within his knowledge, and that his knowledge was derived from proper sources.

A suit was brought to recover for loss of freight against the defendants, as trustees of certain mortgages to secure the payment of bonds issued by a railroad company. *Held*, that it was sufficient to show that the defendants acted as such trustees, and had the control and management of the road as such; that it was not necessary to show that they were actually trustees.

CASE, by John H. Pearson & Co. against William A. Wheeler and others, to recover for loss and injury to a quantity of flour occasioned by fire at Ogdensburg, N. Y., July 28, 1864. By agreement of parties, the cause was tried by the court (LADD, J.), and a verdict rendered for the plaintiffs for $5,995.06, which the defendants moved to set aside for the reasons following:

July 6, 1864, the flour in question was shipped at Toledo, Ohio, on board a propeller of the Northern Transportation Company, to the plaintiffs at Concord, N. H. It arrived at Ogdensburg July 11, 1864, where it remained in the possession of either the Northern Transportation Company, or the defendants, until July 28, 1864, when part of

it was destroyed and the rest damaged by an accidental fire. Upon evidence, to which exceptions hereafter stated were taken, the court found the existence of a business arrangement and contract between the Northern Transportation Company and the defendants, in all material respects the same as that assumed in the second ruling of the court, as reported in the case of Barter & Co. against these defendants, decided December term, 1873.

Upon the question whether such contract or arrangement existed, the following questions and answers in the deposition of Geo. A. Eddy were admitted, subject to the defendants' exception:

3. "Did said Northern Transportation Company, in July, 1864, have any business connection or contract with the different railroads between Ogdensburg and Boston with reference to the transportation of freight?" *Ans.* "They did; they had a verbal contract with the line of railroad between Ogdensburg and Boston." 4. "What was that contract?" *Ans.* "It was a contract for the purpose of doing a through freighting business between West and East, and East and West. 5. "Was there any such contract in writing previous to that time?" *Ans.* "There was a written contract in the year 1863." 6. "How did the verbal contract, existing in July, 1864, differ from the written contract made in 1863?" *Ans.* "Don't recollect there was any material difference."

A sufficient foundation having been laid for the introduction of secondary evidence of the existence and contents of the written contract of 1863, a copy of said contract was admitted, and the defendants excepted. The plea was the general issue.

The defendants were described in the writ as "trustees of the mortgages to secure the payment of the second issue of the bonds of the Northern Railroad Company," etc. The plaintiffs introduced parol evidence to show that the defendants acted in that capacity, and had and exercised the control and management of the road. The court ruled that this evidence was admissible and was sufficient, and that the plaintiffs need not prove the legal title of the defendants to the road; to which ruling the defendants excepted.

*Marshall & Chase* and *S. C. Eastman,* for the plaintiffs.

*Sanborn & Clark* and *Minot, Tappan & Mugridge,* for the defendants.

*RAND, J., C. C. I. The exception to the third, fourth, fifth, and sixth questions and answers in the deposition of George A. Eddy was properly overruled. The witness swore positively to the existence of a verbal contract, in July, 1864, between the Northern Transportation Company and the line of railroad between Ogdensburg and Boston. As nothing appears to the contrary, it is to be presumed that what the witness stated was within his knowledge, and that his knowledge was derived from proper sources.

---

*LADD, J., and FOSTER, C. J., C. C., did not sit.

II. Nor do we perceive any objection to the introduction of a copy of the written contract of 1863 ; and our attention is not called to any objection by the counsel for the defendants.  The two contracts were connected together by the testimony of the witness Eddy, and a sufficient foundation was laid for the introduction of secondary evidence of the existence and contents of the written contract.

III. It was sufficient to show that the defendants acted as trustees of the mortgages to secure the payment of the bonds of the road, and had the control and management of the road ; it was not necessary to show that they were actually such trustees.  *Berryman* v. *Wise*, 4 T. R. 366 ; *Cross* v. *Kaye*, 6 T. R. 663 ; *M' Gahey* v. *Alston*, 2 M. & W. 210 ; *James* v. *Brawn*, 5 B. & Ald. 243 ; *Dunlap* v. *Waldo*, 6 N. H. 452 ; *State* v. *Butman*, 42 N. H. 494 ; *Carr* v. *Dodge*, 40 N. H. 409 ; *Pierce* v. *Richardson*, 37 N. H. 309 ; *Tucker* v. *Aiken*, 7 N. H. 113 ; *Johnston* v. *Wilson*, 2 N. H. 202 ; *Blake* v. *Sturtevant*, 12 N. H. 573 ; *Bean* v. *Thompson*, 19 N. H. 290 ; *Baker* v. *Shephard*, 24 N. H. 208.

SMITH, J.    Eddy having testified that there was a verbal contract between the Northern Transportation Company and the different lines of railroad between Ogdensburg and Boston, it was competent for him to state what that contract was.   It not being in writing, there was no *better* evidence than the verbal testimony of one who knew what the terms of the contract were.   That it did not differ materially from a *written* contract, which existed at some previous time between the parties, does not alter the case.   It was not the contents of the *previous* contract, but of the existing contract, which he was asked to give.

Whether a foundation was laid for the admission of the copy of the written contract was a question of discretion for the judge who tried the cause, and is not open to revision by this court.

The copy of the contract of 1863 having been put in evidence, the jury could see how far it differed, if at all, from the verbal contract of 1864, as testified to by Eddy ; and it was for them to say, upon all the evidence in the case, what was the contract of 1864.

Whether or not, under the general issue, the defendants could dispute the capacity in which they were sued, becomes immaterial.

If it be conceded that, because the defendants are described in the writ as trustees, etc., it is necessary to prove that fact, the parol testimony introduced by the plaintiffs, tending to show that the defendants acted in that capacity, certainly was sufficient in the first instance. The fact was peculiarly within the knowledge of the defendants how this was, and they could easily have disproved it if the fact were otherwise.   In the absence of such proof, it was competent for the jury to find, upon the *prima facie* case made by the plaintiffs, that the defendants were *de jure* trustees, as alleged.

In an action against a sheriff, or other public officer, it is sufficient to show, *prima facie*, that he has acted publicly and notoriously in that character.   2 Gr. Ev., sec. 582 ; 1 *ib.*, secs. 83, 92.   When one is sued as executor, his representative character may be shown by proof

of such acts of intermeddling in the estate as estop him to deny the title, constituting him what is termed an executor *de son tort*. 2 Gr. Ev., sec. 343.

But the inquiry in this suit is not whether the defendants were really trustees of certain mortgages of the Northern Railroad, but did they contract with the plaintiffs, as alleged in the writ, under the name of such trustees, and fail to perform their contract? The allegation that they were such trustees is merely descriptive of the title or name under which they acted, and, consequently, proof that they acted under such name would sustain the allegation. If the evidence show that the defendants were common carriers, they would be liable to all the duties of common carriers, and it would be immaterial whether they acted in a representative capacity, or as individuals. *Barter* v. *Wheeler*, 49 N. H. 9, p. 34.

CUSHING, C. J.  The case of *Dickinson* v. *Lovell*, 35 N. H. 9, is an authority directly in point to show that the objection to the testimony of Eddy was rightly overruled. It is not easy to see what objection could be raised to the mode of proving the contract between the Northern Transportation Company and the defendants. The witness stated that there was a verbal contract, and that he remembered no difference between that contract and the written one of the year before. The absence of the original contract being sufficiently accounted for, a copy was permitted to be used. The facts which the court found, and upon which the copy was admitted, do not appear. If, then, the question of the exercise of the discretion of the court below were open, it would be impossible for this court to act in the matter, having nothing to act upon.

The defendants are described in the writ as " trustees of the mortgages," etc. It does not appear from the case that they were public officers, or had any recognized public duties to perform. Their private duties as such trustees were of course matters of contract between them and their *cestui que trusts*. Of these the court could not take judicial notice. They must be proved into the case like any other facts, if they were material to the matters on trial. If these were proved into the case, and appeared to be material, it would make no difference whether the defendants were described as trustees or not. The production of the contract under which they held the road would show their rights and liabilities, without any reference to the particular name by which they were called.

The addition " trustees," &c., in the writ was mere *descriptio personarum*, and, if objected to, could only be so by plea in abatement. The material matter of inquiry, however, in the case was not under what particular description or name they acted, but what they had been doing. This evidence the court very properly admitted, and on this evidence it appeared that the defendants, under the name of " trustees," &c., were in possession of a certain railroad known as the Northern Railroad, and had been and were then acting as common carriers, and

as such carriers, and in that capacity, had made the contract on which the plaintiffs relied.

The parties seem to have tried this case under the impression that the defendants were public officers, whose rights and liabilities, having been determined in the case of *Barter* v. *Wheeler*, must be taken notice of judicially by the court. This, however, was not so. If their situation as trustees gave them any immunities which could be used in defence of this action, that should have been shown by them. But until such proof were made, it was enough for the plaintiffs to show, as they did, that the defendants were in possession of the road, transacting business and holding themselves out as common carriers by the name by which they were described in the writ.    *Exceptions overruled.*

*Judgment on the verdict.*